Supreme Court of State of New York,
County of Kings

Summons
Index No. 150903/17

Matthew Herrick,
            Plaintiff

            v.

Grindr, LLC,
            Defendant

To the persons named as Defendants above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to appear in this action by serving a notice of appearance on the plaintiff at address set forth below, and to do so within 20 days after service of this Summons (not counting the day of service), or 30 days after service is complete if the summons is not served personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED that should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Date:   January 27, 2017

C. A. GOLDBERG, PLLC

/s/ Carrie Goldberg

Carrie Goldberg, Esq
16 COURT STREET, SUITE 2500
BROOKLYN, NY 11241
(646)666-8908
*Attorney for Plaintiff Matthew Herrick*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------x

MATTHEW HERRICK
        Plaintiff

Index No. _150903/2017_

**COMPLAINT**

GRINDR, LLC
        Defendant.

---------------------------------------------------------------------x

PLAINTIFF, by and through its attorneys C. A. Goldberg, PLLC, hereby files this Complaint

as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Matthew Herrick ("Plaintiff") brings this action against Grindr, LLC ("Grindr")

   for claims arising from Grindr's recklessness. Grindr's product and services have

   facilitated the attempted rape and murder scheme brought by a Grindr user against

   Plaintiff. For four months Plaintiff has been impersonated on Grindr on multiple

   profiles, resulting in as many as 16 individuals per day going to Plaintiff's home and

   workplace aggressively demanding sex, sometimes violently. Plaintiff, his friends, and

   family members have made approximately fifty complaints to Grindr reporting the

   impersonation and its harms and specifically identifying the impersonating accounts.

   Despite possessing the exclusive ability to stop this scorched earth campaign against

   Plaintiff, Grindr made no effort to discontinue or ban the accounts – or even respond to

   Plaintiff's complaints. Grindr's knowing failure to act directly resulted in the ongoing

   stream of strangers physically confronting Plaintiff at all hours of the day and night at

   his home and workplace to demand sex. Plaintiff has been helpless, completely at the

   mercy of Grindr exercising control of its product. Plaintiff's life has been in imminent

1

danger because of Grindr's recklessness. Grindr knowingly and negligently participated in furthering criminal and tortious activity; interested only in increasing its profit, at the expense of its users and their safety. Plaintiff has experienced grave emotional distress and trauma as a result of Grindr and its shocking disregard for a person whose life has been upended as a result of its products and services.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, age 32, is a citizen and resident of New York State for purposes of venue and jurisdiction. He submits himself to the jurisdiction of this Court. He lives and works in New York County.

3. Defendant is a Limited Liability Company, organized in the State of California with its principle place of business in West Hollywood, California, which owns and operates two all-male online geo-social networking applications "Grindr" and "GrindrX" (collectively "Grindr").

4. Jurisdiction and venue are proper as to Grindr pursuant to N.Y. CPLR § 301 because Grindr resides and/or does business within the State of New York. It sells and advertises its products in the State of New York and New York County, and committed tortious acts and omissions in the State of New York.

5. Venue is proper in New York County pursuant to N.Y. CPLR § 503(a) because it is where the cause of action arose and injury occurred and where Plaintiff resides.

6. Alternatively, jurisdiction is proper pursuant to N.Y. CPLR § 302(a), because defendant transacts business, contracts to supply goods or services and/or regularly does and solicits business, engages in a persistent course of conduct, derives substantial revenue or in-kind revenue from the use of its product within the state, committed a tortious act

2

or acts causing injury to person or persons within the state, and should reasonably

expect its act or acts to have consequences in the State of New York.

## STATEMENT OF FACTS

### Grindr's website and operations

7.  Grindr is a geo-social networking application ("app") for smartphones designed to

    facilitate the coupling of gay and bisexual men in their geographic area. It runs on the

    iOS and Android mobile, and is available for download at the Apple App Store and

    Google Play.

8.  Originally launched in 2009, Grindr is purportedly the largest and most popular app for

    gay and bisexual men in the world with nearly ten million users in 192 countries and

    adding 10,000 men daily. Grindr has 2,660,472 users in the United States with 426,710

    in New York City, making New York its top metro area globally by far.  Seven million

    chats are sent through the app per day and two billion monthly impressions are made.

9.  Grindr describes itself on the App Store as "the world's #1 FREE mobile social

    networking app for gay and bi guys to connect. Chat and meet sexy, attractive and

    interesting guys for free, or upgrade to Grindr XTRA for more features and fun."

10. The user interface shows an endless scroll of images of men arranged from nearest to

    farthest away. Users post a brief profile about themselves and can see those of others by

    tapping on their image. Users can chat with one another on the interface with the

3

expectation that the chat will ultimately lead to a date or sexual encounter.



11. To set up a Grindr account, users enter their email address, date of birth, and choose a password. They can then choose whether to opt in for special offers from Grindr and lastly, accept the terms of service. After that, users can personalize their profile which includes a display name, profile photo, "about me" section, age, height, weight, body type, position (i.e. top, vers top, versatile, vers bottom, bottom), ethnicity, relationship status, "tribes" (i.e.. Bear, Clean-cut, Daddy, Discreet, Geek, Jock, Leather, Otter, Poz, Rugged, Trans, and Twink.), "I'm looking for," HIV status and "last tested date."

12. Grindr Xtra is the paid-for subscription version of Grindr which is advertisement free and has other features, such as the ability to load up to 300 users at once, unlimited

4

blocking of other users and quick swiping between profiles. It also allows users to filter by additional categories.

13. Users on Grindr can link their social media accounts to their profile, but are otherwise identified publicly on the app only by username – not by real name or email address.

14. Advertisements are another revenue source for Grindr, especially for businesses making use of the app's geo-location features to finely curate their target audience by neighborhood. As its website states to potential advertisers: "Our geo-targeting allows you to target customers in your neighborhood or around the world. Advertise with Grindr today." (See Grindr Ad Kit https://s3.amazonaws.com/grindr_marketing/US+Media+Kit+05.2014.pdf, last visited January 27, 2017)

15. Per its Privacy Policy, disclosure and sale of users' personal data appears to be a third source of revenue for Grindr. "We may share some or all of your Personal Data withour parent company, any subsidiaries, joint ventures, or other companies under a common control (collectively 'Affiliates') in which case we will require our Affiliates to honor this Privacy Policy. If another company acquires our company, business, or our assets, that company will possess the Personal Data collected by us and will assume the rights and obligations regarding your Personal Data as described in this Privacy Policy (See Grindr Privacy Policy June 10, 2015 http://www.grindr.com/privacy-policy/, last visited January 27, 2017)

16. In August 2013, Grindr released an update that requires users to verify their accounts by providing a valid email address and creating a password.

17. Grindr received negative publicity in 2014 for privacy vulnerabilities relating to triangulation which enabled the exact location of individual users to be pinpointed. In

5

May of 2016, WIRED Magazine showed that pinpointing is still possible via a technique called colluding-trilateration even when users disable the "show distance" option on the app to hide their location. Per WIRED, any targeted user could easily and cheaply be pinpointed without hacking. ("Gay Dating Apps Promise Privacy But Leak Your Exact Location," WIRED, by Andy Greenberg, May 20, 2016, https://www.wired.com/2016/05/grindr-promises-privacy-still-leaks-exact-location/, last visited January 27, 2017)

18. Grindr does not warn users of their vulnerability to being pinpointed.

19. In the past, Grindr has been criticized negligently managing its users. For instance, in 2012 a 13-year-old minor misrepresented his age and was sexually assaulted by two adult males he met through the app. Serial killer, Stephen Port used Grindr to carry out his sick fantasies, drugging, raping, filming, and murdering men he met through the app. One website exists just to rank the top 25 violent crimes committed through the Grindr app. ( http://www.ranker.com/list/grindr-horror-stories/jacob-shelton, last visited January 27, 2017)

20. At all relevant times, Grindr represented to users in its advertising and terms of use that it protects users from "behaviors that endanger them."

21. On its website at Grindr.com, Grindr describes itself as a "global community for men of all backgrounds to connect with one another. We strive to create a safe space where all are welcome to be who they are and express themselves without fear of judgment. In order for everyone to have the best time possible, we have a system of digital and human screening tools to protect our users from actions and behaviors that endanger them and go against what we're about."

6

22. At all relevant times, Grindr represents its ability to ban abusive accounts in its Terms and Conditions of Service ("Terms of Service").

   a.  "WE MAY DELETE YOUR SUBMISSIONS AND WE MAY BAN YOUR ACCOUNT.  Grindr can request that You delete, or Grindr may delete, any User Content [defined elsewhere] at any time for any reason or no reason whatsoever.  Any violation of the Guidelines by your User Content, as determined by Grindr, may result in Your User Account being banned and may lead to the termination of Your access to the Grindr Services."

   b.  "You will NOT use the Grindr Services or any information displayed within the Grindr Services to 'stalk,' harass abuse, defame, threaten or defraud other Users; violate the privacy or other rights of Users; or collect, attempt to collect, store, or disclose without permission location or personal information about other Users."

   c.  "You will NOT use the Grindr Services for the commission or encouragement of any illegal purpose, or in violation of any local, state, national, or international law, including laws governing criminal acts, prohibited or controlled substances, intellectual property and other proprietary rights, data protection and privacy, and import or export control;"

   d.  "You will NOT impersonate any person or entity, falsely claim an affiliation with any person or entity, or access the Grindr User Accounts of other Users;"

   e.  "You will NOT misrepresent the source, identity or content of information transmitted via the Grindr Services; You will NOT intentionally interfere with or damage operation of the Grindr Services or any User's enjoyment of them,

by any means, including uploading or otherwise disseminating viruses, worms, or other malicious code;"

f.  "You will NOT post, store, send, transmit, or disseminate any information or material which a reasonable person could deem to be objectionable, defamatory, libelous, offensive, obscene, indecent, pornographic, harassing, threatening, embarrassing, distressing, vulgar, hateful, racially or ethnically or otherwise offensive to any group or individual, intentionally misleading, false, or otherwise inappropriate, regardless of whether this material or its dissemination is unlawful;"

g.  "You will NOT interfere with anyone's ability to use or enjoy the Grindr Service, or aid or encourage any activity prohibited by this Agreement.

h.  "If we believe that Your profile content or Your conduct within the Grindr Software or Grindr Services violates Our Terms of Service, Your access and User Account may be immediately terminated and all payments forfeited."

i.  "GRINDR RESERVES THE RIGHT TO REFUSE OR SUSPEND ACCESS TO ANY USER, FOR ANY REASON OR NO REASON, AND WITHOUT ANY NOTICE."

23.  Although it represents that it will take a hard line against anybody who uses its app in abusive ways, Grindr in fact does anything but. In the case of Plaintiff, Grindr took no action despite repeated pleas from Plaintiff and third parties.

24.  Upon information and belief, Grindr's owners and operators make little to no effort to screen and monitor the activities of its members or to ban abusive accounts and abusive users although they are well aware of the dangerous uses of their product.

8

25. Grindr knew or should have known that Oscar Juan Carlos Gutierrez "JC" was misusing its product to target Plaintiff and Grindr posed an unreasonable risk and danger to Plaintiff by doing nothing about it.

26. Other similarly situated apps lock out abusive users in the exercise of ordinary care. For example, JC also used the "Scruff" hook-up app to impersonate Plaintiff and to similarly arrange sexual encounters between Plaintiff and strangers. When Plaintiff contacted Scruff, its operators were immediately responsive – they confirmed the identity of the person making the complaint, navigated Plaintiff through their system for complainants to help them identify the offending user, and within 24 hours, not only did Scruff locate and remove the offending profiles but also banned the IP addresses and specific devices from creating new profiles. Scruff also keeps any complainant informed and sends a notification when the problem is resolved.

27. Because its tortious conduct is not predicated on the content of its users. Grindr is not immune from suit in this case under the Communications Decency Act, 47 U.S.C. Section 230 ("Section 230"). Moreover, the injuries to Plaintiff are not the result of Grindr being merely a conduit of information created by JC or other users, but rather, Grindr affirmatively availed itself as a weapon to destroy Plaintiff's life. Grindr refused to stop Plaintiff's nightmare even after being informed of it on dozens of discrete occasions by multiple individuals. Grindr's own acts and omissions are what render it liable and thus not immune under Section 230.

**Plaintiff joins Grindr**

28. On or about May 2011, Plaintiff first joined Grindr. He used the app on and off for several years.

9

29. On or about June, 2015 Plaintiff and JC first started corresponding through the Grindr app. The two began a dating relationship. On or about November 2015, Plaintiff removed his Grindr profile because the relationship with JC had become more serious.

30. Unbeknownst to Plaintiff, JC began impersonating Plaintiff on Grindr to chat with other users starting in November 2015 and lasting until Plaintiff discovered this in June, 2016 when he convinced JC to stop. In August, 2016 Plaintiff began using his Grindr account again. Plaintiff ended his relationship with JC on in early October, 2016 because of JC's abuse and control.

31. After that, JC creatively, energetically, and seemingly without time constraints, embarked on a scorched earth campaign against Plaintiff – stalking him online and offline, attempting to destroy Plaintiff's reputation, employment, and future job prospects as an actor.

32. The most pernicious and relentless of JC's tactics to destroy Plaintiff was through the creation of Grindr profiles impersonating Plaintiff and making endless appointments for sexual encounters between Plaintiff and strangers.

33. Impersonating profiles included names like "Raw Pig Bottom" "Hi," "hey," and "muscle daddy" and contained actual photographs of Plaintiff and accurate descriptions of Plaintiff's height, weight, ethnicity, body type, etc. The profiles would state at times "hosting in Harlem, into serious kink and many fantasy scenes" and "hosting in Harlem, ff, ws, kink" and indicated that Plaintiff is a "Top" and on "PrEP." When impersonating Plaintiff, JC would at various times indicate that Plaintiff was HIV positive, interested in hardcore and unprotected sex (e.g. fisting), bondage, and had drugs to provide.

10

34. One impersonating profiled, named "Gang Bang Now!" describes Plaintiff as "Waiting

on all 4's with my ass lubed."  Another one, named " Hosting " describes

Plaintiff as "Looking for a group of hung tops to come over and destroy my ass."





11



35. JC would manipulate the geo-physical settings to correspond with Plaintiff's home and work addresses and chat with other users through the app to arrange sex dates between Plaintiff and these strangers. JC would spoof Plaintiff's phone number.

36. From November, 2016 to the present, Plaintiff received between 1 and 16 individuals per day showing up to his home and restaurant workplace expecting sex. The typical number of visitors per day was 4 to 8 at home and at its peak, an additional 4 to 8 visitors per Plaintiff's six hour work shift. All visits were arranged by JC impersonating Plaintiff on the Grindr app.

37. After deactivating his apartment's buzzer because of this, rare is the day that Plaintiff or his roommate leave home or return there without confronting individuals waiting for Plaintiff.

12

FILED: NEW YORK COUNTY CLERK 01/27/2017 06:43 PM
NYSCEF DOC. NO. Case 1:17-cv-00932-VEC Document 14-1 Filed 02/17/17 Page 14 of 32

INDEX NO. 150903/2017
RECEIVED NYSCEF: 01/27/2017

38. For instance, between January 13, 2017 and January 17, 2017, 4 to 13 men showed up at Plaintiff's place of employment every single day under the pretenses that Plaintiff was going to have sex with them in the bathroom. Several stayed even after Plaintiff informed them about the impersonation, and one watched him for an additional thirty minutes. On January 16, 2017, 2 men who came to Plaintiff's home refused to leave and lingered outside his home even after Plaintiff explained he was being impersonated.

39. On January 17, 2017, 13 men visited Plaintiff's home and job expecting to have sex with him. All were sent through Grindr. On that day, during a 4-minute time span (12:22pm to 12:26pm), 6 different men visited Plaintiff at work.

40. On January 18, 2017, another 13 men visited Plaintiff's home and job, including one man who followed Plaintiff to the bathroom at work expecting to have sex.

41. On January 19, 2017, Plaintiff's day off from work, a co-worker vaguely resembling Plaintiff was mistaken for Plaintiff 5 times.

42. On January 22, 2017, a Grindr visitor got into Plaintiff's apartment building and refused to leave. The man persisted on demanding to see Plaintiff even after Plaintiff's roommate told him to leave. When Plaintiff's roommate went into the hall to tell the intruder he was calling the police, the man lunged at the roommate, grabbed the roommate's phone and they started wrestling. Plaintiff had to break up the fight. The man ran away.

43. On one occasion while Plaintiff was working a busy brunch shift, a stranger came for sex, and when Plaintiff told him about the impersonation, the man screamed at Plaintiff in front of all the staff, management and guests, at the top of the lungs "YOU LYING WHORE!!! ANOTHER WHORE FROM GRINDR!!" and repeatedly hollered "FUCK YOU!"

13

44. On two occasions in January 2017, men stood outside Plaintiff's apartment building for over 30 minutes even after he told them about the impersonation. In another situation, a man waited at the end of Plaintiff's block for at least thirty minutes after being turned away. Similarly, responders to the profiles have lingered at Plaintiff's workplace for as long as half an hour after Plaintiff informed them of JC's hoax.

45. Often JC uses Grindr to precondition the visitors to expect Plaintiff's resistance as part of an agreed upon rape fantasy or role play. One of them who entered the building and stood outside Plaintiff's unit door returned 15 minutes later insisting that Plaintiff had just urged him on Grindr to return.

46. Plaintiff is not safe in his own home. The men who respond to the ad are intimidating and often on drugs or seeking drugs from Plaintiff based on JC's representations that Plaintiff has drugs to provide. Individuals have banged on the window of Plaintiff's roommate demanding access to Plaintiff. Multiple men have shown up sweating profusely, entered Plaintiff's apartment building and refused to leave until they were physically escorted off the premises. On one occasion, a demonstratively high man who visited Plaintiff's home was told about the impersonation, and then became hostile and aggressive toward Plaintiff's roommate when asked to leave. He had to be escorted away by the police. That same man returned another day. Even when Plaintiff is not at home, unwanted visitors come from Grindr, disrupting the daily life of his roommates.

47. In addition to deactivating his apartment buzzer, Plaintiff has posted signs in the building windows telling visitors not to go up to his apartment: "WARNING GRINDR USERS: Do Not Buzz for or Enter Apt [**]. FAKE PROFILE. REPORT to GRINDR" On January 27, 2017 a user ripped the sign off the front door and aggressively tried to barge into Plaintiff's home, causing Plaintiff to call the police.

14

48. JC has also used Grindr to incite hostility and violence toward Plaintiff, especially by picking fights with other Grindr users and portraying Plaintiff as racist. Individuals who were in contact with Plaintiff's impersonating profile have called the restaurant where he works, threatening him and telling the hostess they'd spoken to him on Grindr and that if Plaintiff continued to call people the "N word" they were going to come and beat him.

49. The individuals who respond to the ads are often sexually aggressive toward Plaintiff based on JC's use of the app to inform them that Plaintiff is interested in bondage, fisting, watersports, and unprotected sex. The app also represents Plaintiff as HIV Positive, which he is not.

50. Plaintiff reported the abusive accounts to Grindr through its interface approximately 50 times during the months of November 2016 and January 2017.

51. Separately Plaintiff's sister and two roommates have also faced harassment and have reported the abusive accounts to Grindr numerous times as well – on Plaintiff's behalf and their own.

52. At no time did Grindr remove the abusive accounts. In response to Plaintiff's detailed pleas, at best Grindr responded with an auto-generated reply stating "Thank you for your report."

53. At times, there were multiple impersonating accounts side-by-side with the same name – an incontrovertible unambiguous demonstration of policy violations, such as on January 20, 2017 when two accounts both named "HUNGRY BTTM🥵!!!" were both posted, both soliciting men interested in unprotected sex (i.e. "My hairy 🍑needs a BIG 🍆

15

NOW!!! I prefer my veggies raw!" and "My hungry hairy ass is always looking for good

🍆. I prefer my veggies raw.")

54. Plaintiff has filed approximately 14 police reports and petitioned in family court for an order of protection.

55. Plaintiff's attorney sent a cease and desist and preservation letter to Grindr on January 24, 2017.

56. Plaintiff suffered and continues to suffer serious pain and mental distress as a result of Grindr's role in facilitating this unfathomable nightmare.

57. Before this, Plaintiff was a private person with a quiet and low-key life, toiling away at a restaurant full-time to pursue his career in acting and modeling. Now photographers are afraid to work with him on a professional level. He had to drop a sponsorship with a South African touring company.

58. Now Plaintiff is humiliated on a daily basis and afraid to be in public places or at home alone. He is afraid to even walk his dog alone at night. He is in a constant state of hyper-vigilance, afraid that Grindr has been used to incite or seduce the wrong person – somebody who will make good on threats to attack or rape him.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Grindr's Negligence)

59. Plaintiff repeats and reasserts all statements and allegations above as though fully set forth herein.

16

60. Grindr had a duty to Plaintiff to exercise reasonable care in operating its app, monitoring users, screening users, and acting on reports of abuse.

61. Grindr voluntarily undertook a duty to screen, monitor, and take action to ban members who misuse their product.

62. Grindr knew or should have known of the foreseeable risk of harm to Plaintiff by ignoring his repeated requests to deactivate JC's abusive and impersonating Grindr accounts.

63. Grindr failed to exercise reasonable care in operating its app, monitoring users, screening users, and acting on reports of abuse and stalking.

64. Compared to like products and businesses, the standard of care exercised by Grindr is not reasonably prudent.

65. Grindr negligently failed to investigate and respond to Plaintiff's reports of abuse, impersonation, and stalking.

66. Grindr negligently failed to comply with its own written policies to protect its users and ban abusive accounts as promised in its Terms of Service.

67. Grindr negligently failed to enact or enforce policies, procedures and a system for banning abusive users.

68. Grindr negligently failed to properly supervise its employees to ensure that they acted upon and investigated reports of abuse facilitated through the app.

69. Grindr negligently failed to screen users to stop abusers from using the service to target and victimize others.

70. Grindr were and are negligent per se.

71. As a direct and proximate cause of Grindr's negligence, Plaintiff was impersonated and stalked, resulting in approximately 400 persons coming to his home and workplace over

17

a three-month period expecting to have sex with him, causing him to suffer from emotional distress, pain and suffering, lost past and future wages, and loss of enjoyment of life.

72. Each of the foregoing acts, omissions and factual allegations contained in the preceding paragraphs constitute an independent act of negligence on the part of Grindr and one or more or all above stated acts were proximate causes of the injuries sustained by Plaintiff.

73. Grindr is liable for Plaintiff's injuries, pain and suffering, treatment, and all other damages allowed under the laws of the State of New York, including all special, compensatory, incidental, consequential, economic, and punitive damages.

74. Plaintiff brings each and every claim permissible under New York law for his injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: Personal injuries

   j. Past, present, and future pain and suffering;

   k. Past, present and future lost wages and economic damages;

   l. Past, present, and future medical expenses,

   m. Disability

   n. Mental anguish

   o. Lost ability to labor

   p. Loss of the capacity for the enjoyment of life;

   q. Incidental expenses;

   r. Permanent injuries; and

18

s.   Consequential damages to be proven at trial.

75. Plaintiff is entitled to recover punitive or exemplary damages from Grindr, without

limitation or cap, because the actions of Grindr and its agents and employees showed an

entire want of care that would raise the presumption of conscious indifference to

consequences. Grindr's acts and omissions involved malice, oppression, insult, wanton

disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to

protect the public from similar acts and deter the defendant going forward.

Accordingly, Plaintiff is entitled to recover punitive damages from Grindr in accordance

with the enlightened conscience of an impartial jury.


**SECOND CAUSE OF ACTION**

**(Grindr's violation of N.Y. Gen. Bus. Law Section 349 (the "Deceptive Business**

**Practices Act"))**

76. Plaintiff repeats and reasserts all statements and allegations above as though fully set

forth herein.

77. Defendant Grindr "conducted a business" or "furnished a service" as those terms are

defined in N.Y. Gen. Bus. Law Section 349 (the "Deceptive Practices Act").

78. Defendant Grindr knowingly and willfully violated the Deceptive Practices Act by

engaging in acts and practices that were misleading in a material way, unfair, deceptive,

and contrary to public policy and generally recognized standards of business.

79. These practices include, but are not limited to misleading and deceptive statements in

promoting its products as set forth above and in its privacy vulnerability enabling users

to pinpoint a user's whereabouts.


19

80. Upon information and belief, the representations on the Apple App Store and on Google Play were in circulation through the date of this filing.

81. Grindr's deceptive false and misleading statements were made with the goal of attracting more consumers to the product, to give those consumers a false sense of safety, and to induce users to rely on and trust Grindr, to protect the privacy of their location when users turned off location services, and to intervene if the app was put to ill use.

82. The public is harmed by Grindr's false and/or misleading representations.

83. Plaintiff suffered damages as a proximate result of Grindr's deceptive acts; he experienced emotional distress, harm to his reputation and career, and put him in imminent danger of being raped and murdered. The injury has cost and continues to cost Plaintiff.

84. Defendant Grindr's deceptive acts involved communications and statements digitally communicated to consumers in New York State and caused injury in New York State, and were part of a pattern directed at the public, including the millions of consumers in New York who visit the website to download Grindr and use it.

85. Defendant Grindr's practices have had and continue to have a broad impact on hundreds of thousands of consumers throughout New York State.

86. Defendant Grindr's statements and actions described here entitle Plaintiff to increased damages, attorneys' fees, and injunctive relief under N.Y. Gen. Bus. Law Section 349 (h).

## THIRD CAUSE OF ACTION

**(Violation of N.Y. Gen Bus. Law Sections 350, 350-a ("False Advertising"))**

20

87. Plaintiff repeats and reasserts all statements and allegations above as though fully set forth herein.

88. Grindr's promotion, marketing, and advertising of its services and products is misleading in a material respect, deceptive, and is directed at the general public and consumers within the State of New York.

89. Such promotion, marketing and advertising include statements made in writing and by Internet communication to Plaintiff and consumers like Plaintiff regarding the nature and efficacy of Grindr's product and safety features.

90. To an egregious extent, the promotion, marketing, and advertising fail to reveal facts material to Grindr's product.

91. Defendant's false advertisements include, but are not limited to the misleading and deceptive statements in the Terms of Service.

92. Upon information and belief, those representations made by Grindr were disseminated from 2009 through and including, January 27, 2017.

93. Grindr's product has been and continues to be advertised and available within the State of New York.

94. Grindr's false advertising, marketing and promotion intentionally, deliberately, willfully or knowingly deceived the public and consumers, confused or was likely to confuse the public and consumers, and materially misled consumers as to the nature, characteristics, and/or qualities of its products or services.

95. Consumers, including Plaintiff, have reasonably relied upon these misrepresentations and in making decisions and have been injured and damaged and are likely to be further injured and damaged by Grindr's statements and actions in violation of N.Y. Gen Bus. Law 350, 350-a.

21

96. A reasonable consumer acting reasonably under the circumstances would have believed, as Plaintiff did, that Grindr's representations made in writing and electronically regarding the nature and efficacy of its product were truthful.

97. Plaintiff was injured as a result of Grindr's deceptive advertising, marketing, and promotion. Plaintiff relied on the statements made therein resulting in his use of the Grindr product induced by trust that Grindr would enforce its policies against users who flagrantly use its product to abuse and destroy. The injury has cost and continues to cost Plaintiff considerable expense, both tangible and intangible.

98. Plaintiff's false advertising violates the rules and regulations of statutes administered by the Federal Trade Commission.

99. Grindr's statements and actions entitle Plaintiff to increased damages, reasonable attorneys' fees and injunctive relief under N.Y. Gen. Bus Law Section 350-e.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

100. Plaintiff repeats and reasserts all statements and allegations above as though fully set forth herein.

101. Grindr's acts and omissions involved in handling Plaintiff's pleas for it to control its product and disable the accounts being used to destroy his life were extreme and outrageous, and beyond all possible bounds of decency, and utterly intolerable in a civilized community.

102. Grindr was intentional and reckless in the acts and omissions that ignored Plaintiff's repeated requests to intervene and disable the accounts that were ruining his life and endangering him. Grindr either intended to cause or disregarded the substantial

22

probability of causing Plaintiff severe emotional distress. Grindr was interested in its profit and didn't care if users were running amuck.

103. Plaintiff experienced emotional distress as a result of Grindr's actions and omissions.

104. The Grindr app directly caused Plaintiff's emotional distress because it was through this app that the hundreds and hundreds of unwanted visitors were able to locate Plaintiff in his private home and workplace expecting sex.

105. Grindr was in the exclusive position to stop the harm Plaintiff was experiencing and yet refused to do so.

106. Plaintiff brings each and every claim permissible under New York law for his injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: Personal injuries

  t. Past, present, and future pain and suffering;

  u. Past, present and future lost wages and economic damages;

  v. Past, present, and future medical expenses,

  w. Disability

  x. Mental anguish

  y. Lost ability to labor

  z. Loss of the capacity for the enjoyment of life;

  aa. Incidental expenses;

  bb. Permanent injuries; and

  cc. Consequential damages to be proven at trial.

23

107. Plaintiff is entitled to recover punitive or exemplary damages from Grindr, without limitation or cap, because the actions of Grindr and its agents and employees showed an entire want of care that would raise the presumption of conscious indifference to consequences. Grindr's acts and omissions involved malice, oppression, insult, wanton disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to protect the public from similar acts and deter the defendant going forward.

Accordingly, Plaintiff is entitled to recover punitive damages from Grindr in accordance with the enlightened conscience of an impartial jury.

## FIFTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

108. Plaintiff repeats and reasserts all statements and allegations above as though fully set forth herein.

109. Grindr owed a duty to Plaintiff to abide by its own terms of use and to responsibly control its product to prevent it from being used to destroy another person's peaceful life.

110. Grindr breached its duty of care.

111. Grindr breached its duty to Plaintiff through the acts and omissions involved in handling Plaintiff's numerous complaints and requests for Grindr to control its product and disable the accounts being used to destroy his life.

112. Breach of its duty resulted in hundreds of strangers coming to Plaintiff's home and workplace seeking unprotected sex and drugs, thereby endangering Plaintiff's physical safety or caused Plaintiff to fear for his physical safety.

113. Breach of its duty resulted directly in emotional harm to Plaintiff.

24

114. Grindr was intentional and reckless in the acts and omissions that ignored Plaintiff's repeated requests to intervene and disable the accounts that were ruining his life. Grindr either intended to cause or disregarded the substantial probability of severe emotion distress.

115. Plaintiff experienced emotional distress as a result of Grindr's actions and omissions.

116. The Grindr app directly caused Plaintiff's emotional distress because it was through this app that the hundreds and hundreds of unwanted visitors were able to locate Plaintiff in his private home and workplace expecting sex.

117. Grindr was in the exclusive position to stop the harm Plaintiff was experiencing and yet refused to do so.

### SIXTH CAUSE OF ACTION

### (Grindr's Failure to Warn)

118. Plaintiff incorporates by Plaintiff repeats and reasserts all statements and allegations above as though fully set forth herein.

119. During the period of time when Plaintiff received the enormous quantity of unwanted visitors expecting sex, some of the visitors, once informed of the impersonation, said they were aware of JC having done the same hoax in the past, impersonating others. Upon information and belief, JC has been reported for his abuse of the Grindr in the past and yet Grindr continues to make no effort to ban him and still rolls out the red carpet for this disturbed individual.

120. Grindr had actual or constructive knowledge that its product was being misused, that users' exact locations could be pinpointed even when location services were off, and

25

that JC was relentlessly putting Grindr to malicious use and causing injury to Plaintiff and upon information, other individuals before him.

121. Because of Grindr's knowledge of the dangerous conditions resulting from its product, Grindr had a failure to warn users such as Plaintiff of the dangers known to it that rendered the product and service unreasonably dangerous to him and the general public.

122. Grindr voluntarily undertook a duty to screen, monitor, warn, and take users using the service for unlawful purposes such as stalking and impersonating and harassing.

123. Grindr failed to warn Plaintiff of JC's prior actions misusing the app and of the other dangers, such as location pinpointing, they knew existed on Grindr, and thereby breached a duty of care to Plaintiff and the general public.

124. As a direct and proximate cause of Grindr's failure to warn, Plaintiff has been stalked and harassed by strangers and his entire life has been disrupted and threatened by a steady stream of people at his home and work expecting to have sex with him and he suffered emotional distress, pain and suffering, lost past and future wages, and loss of enjoyment of life.

125. Plaintiff brings each and every claim permissible under New York law for his injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: Personal injuries

    dd. Past, present, and future pain and suffering;

    ee. Past, present and future lost wages and economic damages;

    ff. Past, present, and future medical expenses,

    gg. Disability

26

hh. Mental anguish

ii. Lost ability to labor

jj. Loss of the capacity for the enjoyment of life;

kk. Incidental expenses;

ll. Permanent injuries; and

mm.     Consequential damages to be proven at trial.

126. Plaintiff is entitled to recover punitive or exemplary damages from Grindr, without

limitation or cap, because the actions of Grindr and its agents and employees showed an

entire want of care that would raise the presumption of conscious indifference to

consequences. Grindr's acts and omissions involved malice, oppression, insult, wanton

disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to

protect the public from similar acts and deter the defendant going forward.

Accordingly, Plaintiff is entitled to recover punitive damages from Grindr in accordance

with the enlightened conscience of an impartial jury.


## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

127. Grindr made statements in its Terms of Service.  Grindr was aware that the statements

made therein were to be used for a particular purpose or purposes – presumably to create

an agreement with users and assure them that they applied community standards to

make its product safe.

128. Plaintiff and all Grindr users relied on the assurances from Grindr that it would

enforce its user policies.

27

Case 1:17-cv-00932-VEC   Document 14-1   Filed 02/17/17   Page 29 of 32

129. Grindr is aware that its users use its product. The use of the Grindr product links Grindr and plaintiff.

130. Grindr's statements and conduct exaggerated or misstated certain facts – those relating to the oversight of its product and safety of its users.

131. Grindr was negligent and/or lacking in due diligence for making such misstatements about the safety features of its product when in fact it does not enforce safety measures.

132. Grindr is bound to Plaintiff by a relation or duty of care beyond a mere contract between the parties.

133. Grindr is in a special position of confidence and trust in relation to Plaintiff. Grindr was in the unique and exclusive position to stop the injury to Plaintiff and did not do so.

134. Plaintiff relied on Grindr's misstatements. Had he known that Grindr did not enforce its policies, he never would have become a Grindr user in the first place.

135. Plaintiff suffered damages as a result.

136. Plaintiff brings each and every claim permissible under New York law for his injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: Personal injuries

    nn. Past, present, and future pain and suffering;

    oo. Past, present and future lost wages and economic damages;

    pp. Past, present, and future medical expenses,

    qq. Disability

    rr. Mental anguish

    ss. Lost ability to labor

28

tt. Loss of the capacity for the enjoyment of life;

uu. Incidental expenses;

vv. Permanent injuries; and

ww.     Consequential damages to be proven at trial.

137. Plaintiff is entitled to recover punitive or exemplary damages from Grindr, without limitation or cap, because the actions of Grindr and its agents and employees showed an entire want of care that would raise the presumption of conscious indifference to consequences. Grindr's acts and omissions involved malice, oppression, insult, wanton disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to protect the public from similar acts and deter the defendant going forward. Accordingly, Plaintiff is entitled to recover punitive damages from Grindr in accordance with the enlightened conscience of an impartial jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court award judgments in its favor as follows:

(a) Enjoin Grindr from engaging in deceptive acts and practices that impact consumers in New York State pursuant to N.Y. Gen Bus. Law Section 349(h);

(b) Enjoin Grindr from advertising, marketing or promoting its services and products in a false, materially misleading or deceptive manner in New York State pursuant to N.Y. Gen. Bus. Law Section 350-e;

(c) On its First, Second, Third, Fourth, Fifth, Sixth, and Seventh causes of action, damages in an amount to be proved in trial, plus other actual and consequential damages in an amount to be determined at trial;

29

(d) Punitive damages to the extent permitted by law;

(e) Interest at the legal rate on all claims for compensatory damages;

(f) The costs and disbursements of this action;

(g) Reasonable attorneys' fees to the extent permitted by law;

(h) Such other and further relief as the court may deem just and proper.

TRIAL BY JURY IS HEREBY DEMANDED.

Dated:          Brooklyn, New York
                January 27, 2017

                                        Respectfully submitted,


                                        C. A. GOLDBERG, PLLC


                                        Carrie Goldberg, Esq.
                                        Lindsay B. Lieberman, Esq.
                                        Adam G. Massey, Esq.
                                        16 Court Street, Suite 2500
                                        Brooklyn, NY 11241
                                        (646) 666-8908
                                        carrie@cagoldberglaw.com

30

Supreme Court of State of New York,          Index No.   *150903 /17*
County of New York

Matthew Herrick,

Plaintiff

V

Grindr, LLC,

Defendant

COMPLAINT

C. A. GOLDBERG, PLLC
16 COURT STREET, SUITE 2500
BROOKLYN, NY 11241
(646)666-8908

Signature

Carrie Goldberg, Esq

