UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HERRICK,<br><br>    Plaintiff,<br><br>              v.<br><br>GRINDR, LLC<br><br>    Defendant. | Case No. 1:17-cv-00932-VEC<br><br>**ORAL ARGUMENT REQUESTED** |

**GRINDR LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

BRYAN CAVE LLP
1290 Avenue of the Americas
35th Floor
New York, NY 10021
*Counsel for Defendant Grindr LLC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................ 2

    The Grindr App .......................................................................................... 2

    Plaintiff's Allegations ................................................................................ 3

    Plaintiff's Attempts to Evade the CDA ..................................................... 4

    The Geo-Locating Allegations .................................................................. 6

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ............................................................................................................... 7

POINT I:  PLAINTIFF'S CLAIMS ARE BARRED AS A MATTER OF LAW BY THE
COMMUNICATIONS DECENCY ACT .................................................... 7

    A.    The CDA Immunizes Interactive Computer Service Providers Like Grindr
From Claims Based On Content Created By Third Parties ..................... 7

    B.    Grindr Is An "Interactive Computer Service" ........................................ 9

    C.    A Separate "Information Content Provider" Provided The Content At
Issue ....................................................................................................... 9

    D.    Plaintiff Seeks To Hold Grindr Liable As The Publisher Of Third-Party
Content ................................................................................................... 13

POINT II:  THE COMPLAINT'S FACTUAL ALLEGATIONS DO NOT STATE  ANY
CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................... 14

    A.    Plaintiffs Allegations Do Not State Product Liability Claims (Counts I-V) ........ 14

        1.    The Grindr App Is Not A "Product" Within The Meaning Of The
Law ............................................................................................... 15

        2.    Plaintiff Has Not Alleged A Flaw Or Defect In The App (Counts I,
II, IV) .......................................................................................... 16

        3.    Plaintiff Has Not Alleged A Foreseeable Risk Or Duty To Warn
(Counts III, V) ............................................................................. 17

4.    The Insufficient "But For" Causation Is Fatal To The Failure To Warn Claim ............................................................................... 18

B.    Plaintiff Has Not Stated A Claim For Negligence (Count VI) ............................. 18

C.    Plaintiff Has Not Stated A Claim For Copyright Infringement (Count VII)........ 19

D.    Plaintiff Has Not Stated A Claim For Promissory Estoppel (Count VIII) ........... 22

E.    Plaintiff Has Not Stated A Claim For Fraud (Count IX) ...................................... 23

F.    Plaintiff Has Not Stated Claims For Deceptive Business Practices Or False Advertising Under N.Y. G.B.L. §§ 349, 350, or 350-a (Counts X and XI).......... 25

1.    The Claims For False Advertising And Deceptive Practices Are Time-Barred ...................................................................................... 25

2.    Plaintiff Has Not Alleged Any Consumer-Oriented Deceptive Practice Or Misleading Advertisement ...................................................... 26

3.    Plaintiff Has Not Alleged Any Injury Proximately Caused By Any Practice Or Advertisement ........................................................................ 27

G.    Plaintiff Has Not Stated Claims For Intentional Or Negligent Infliction Of Emotional Distress (Counts XII, XIII)................................................................. 28

H.    Plaintiff Has Not Stated A Claim For Negligent Misrepresentation (Count XIV) ........................................................................................................ 29

CONCLUSION.................................................................................................................. 30

### TABLE OF AUTHORITIES

**Cases**

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011).......................................................................... 23, 24

*Amatulli by Amatulli v. Delhi Constr. Corp.*,
   77 N.Y.2d 525, 569 N.Y.S.2d 337 (1991) .................................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 5, 7, 21

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ....................................................................... 2

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ................................................................................ 7, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 6, 7

*Beyer v. Parents for Megan's Law*,
   No. 13-15544, 2014 WL 3057492 (Sup. Ct. Suffolk Cnty. May 19, 2014)........................ 28, 29

*Bravman v. Baxter Healthcare Corp.*,
   984 F.2d 71 (2d Cir. 1993) ....................................................................................... 18

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014) ....................................................................... 20, 21

*Carafano v. Metrosplash.com. Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ................................................................................. 10, 14

*Chevrestt v. American Media, Inc.*,
   204 F. Supp. 3d 629 (S.D.N.Y. 2016) ....................................................................... 21

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
   12 N.Y.3d 616, 883 N.Y.S.2d 772 (2009) ................................................................. 27, 28

*Cooper v. Pathmark Stores, Inc.*,
   998 F. Supp. 218 (E.D.N.Y. 1998).......................................................................... 18

*DiMaggio v. International Sports Ltd.*,
   No. 97 Civ. 7767 (HB), 1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) .................................... 20

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007),
    *aff'd*, 528 F.3d 413 (5th Cir. 2008) ........................................................................ 14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................................................. 10, 12, 13

*Federal Trade Comm'n v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) ........................................................................... 7, 10

*Fromer v. Yogel*,
    50 F. Supp. 2d 227 (S.D.N.Y. 1999) ................................................................... 29

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ......................................................................... 10

*Gardianos v. Calpine Corp.*,
    16 A.D.3d 456, 791 N.Y.S.2d 628 (2d Dep't 2005) ............................................... 29

*Gibson v. Craigslist, Inc.*,
    No. 08 CIV. 7735 (RMB), 2009 WL 1704355 (S.D.N.Y. June 15, 2009) ................ 7, 9, 13, 17

*Gonzalez by Gonzalez v. Pius*,
    138 A.D.2d 453, 525 N.Y.S.2d 868 (2d Dep't 1988) ............................................... 18

*Gordon v. Eastern Ry. Supply, Inc.*,
    82 N.Y.2d 555, 606 N.Y.S.2d 127 (1993) .............................................................. 19

*Gorran v. Atkins Nutritionals, Inc.*,
    464 F. Supp. 2d 315 (S.D.N.Y. 2006),
    *aff'd*, 279 Fed. App'x 40 (2d Cir. 2008) ......................................................... 15, 16

*Green v. America Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) ............................................................................... 7

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ................................................................................. 5

*Herrick v. Grindr, LLC*,
    No. 17-CV-932 (VEC), 2017 WL 744605 (S.D.N.Y. Feb. 24, 2017) ........................... *passim*

*Idrees v. Am. Univ. of the Caribbean*,
    546 F. Supp. 1342 (S.D.N.Y. 1982) ................................................................... 24

*Intellect Art Multimedia, Inc. v. Milewski*,
    No. 117024/08, 2009 WL 2915273 (Sup. Ct. N.Y. Cnty. Sept. 11, 2009) .................... 15

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ............................................................ 15, 16

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016),
    *cert. denied*, 137 S. Ct. 622 (2017) .............................................. 8, 9, 14

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ........................................................ 7, 9, 10

*King v. New York City Emps. Ret. Sys.*,
    No. 13-CV-4730, 2016 WL 3996343 (E.D.N.Y. July 25, 2016) ............................. 27

*Lancaster Silo & Block Co. v. Northern Propane Gas Co.*,
    75 A.D.2d 55, 427 N.Y.S.2d 1009 (4th Dep't 1980) ................................. 17

*Landrine v. Mego Corp.*,
    95 A.D.2d 759, 464 N.Y.S.2d 516 (1st Dep't 1983) ................................. 17

*Lanzi v. Brooks*,
    54 A.D.2d 1057, 388 N.Y.S.2d 946 (3d Dep't 1976),
    *aff'd*, 43 N.Y.2d 778, 402 N.Y.S.2d 384 (1977) ................................. 24

*Laub v. Faessel*,
    297 A.D.2d 28, 745 N.Y.S.2d 534 (1st Dep't 2002) ................................. 30

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................................. 26

*Lunney v. Prodigy Servs. Co.*,
    94 N.Y.2d 242, 701 N.Y.S.2d 684 (1999) ......................................... 19

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*,
    728 F. Supp. 2d 205 (E.D.N.Y. 2010) ............................................. 27

*Manchanda v. Google*,
    No. 16-CV-3350 (JPO), 2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016) ............ 14, 27, 29

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014) ............................................. 25, 26

*McCarthy v. Olin Corp.*,
    119 F.3d 148 (2d Cir. 1997) ..................................................... 18

*Merck Eprova AG v. Brookstone Pharm., LLC*,
    920 F. Supp. 2d 404 (S.D.N.Y. 2013) ............................................. 25

*Morelli v. Weider Nutrition Group, Inc.*,
  275 A.D.2d 607, 712 N.Y.S.2d 551 (1st Dep't 2000) ................................................. 25

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
  No. 09 CV 2669 (LAP), 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ................................. 21

*Murawski v. Pataki*,
  514 F. Supp. 2d 577 (S.D.N.Y. 2007) ................................................................ 11, 13

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013) ........................................................................ 23, 24

*Okeke v. Cars.com*,
  40 Misc.3d 582, 466 N.Y.S.2d 843 (Civ. Ct. Queens Cnty. 2013) ................................... 19

*O'Kroley v. Fastcase Inc.*,
  No. 373-0780, 2014 WL 2881526 (M.D. Tenn. June 25, 2014),
  *aff'd*, 831 F.3d 352 (6th Cir. 2016),
  *cert. denied*, 137 S. Ct. 639 (2017) ................................................................ 10, 11

*Orozco v. Fresh Direct, LLC*,
  No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016) ................................. 2

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ............................................................... 26

*Palatkevich v. Choupak*,
  Nos. 12 Civ. 1681 (CM), 12 Civ. 1682 (CM), 2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) .. 20

*Palmer Kane LLC v. Scholastic Corp.*,
  No. 12 CV 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ........................................... 20

*Patrick Collins, Inc. v. John Does 1-7*,
  No. 12 CV 2963 (VB), 2012 WL 1889766 (S.D.N.Y. May 24, 2012) ................................... 21

*People ex rel. Spitzer v. Katz*,
  No. 405062/06, 2007 WL 1814652 (Sup. Ct. N.Y. Cnty. June 4, 2007) ............................... 25

*Plunket v. Doyle*,
  No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ........................... 20, 21

*Poindexter v. EMI Record Grp. Inc.*,
  No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ........................ 4, 5

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014) .......................................................................... 21

*Rakofsky v. Washington Post,*
    No. 105573/11, 2013 WL 1975654 (Sup. Ct. N.Y. Cnty. Apr. 29, 2013) ................................ 28

*Ricci v. Teamsters Union Local 456,*
    781 F.3d 25 (2d Cir. 2015) ........................................................................................................ 13

*Richmond v. National Grid,*
    No. 12-CV-1319 (DLI)(VMS), 2013 WL 1338870 (E.D.N.Y. Mar. 29, 2013),
    *aff'd sub nom. Richmond v. National Grid, Brooklyn Union Gas Co.,* 553 Fed. App'x 56
    (2d Cir. 2014) ..................................................................................................................... 26, 27

*Sanders v. Acclaim Entm't, Inc.,*
    188 F. Supp. 2d 1264 (D. Col. 2002) ...................................................................................... 15

*Santana v. Leith,*
    117 A.D.3d 711, 985 N.Y.S.2d 147 (2d Dep't 2014) ............................................................... 29

*Saponaro v. Grindr, LLC,*
    93 F. Supp. 3d 319 (D.N.J. 2015) ............................................................................ 9, 10, 12, 30

*Seldon v. Magedson,*
    No. 11 Civ. 6218 (PAC)(MHD), 2012 WL 4475274 (S.D.N.Y. July 10, 2012),
    *report and recommendation adopted,* 2012 WL 4475020 (S.D.N.Y. Sept. 28, 2012) .............. 8

*Stutman v. Chemical Bank,*
    95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) ........................................................................... 25, 26

*Torrogrossa v. Towmotor Co.,*
    44 N.Y.2d 709, 405 N.Y.S.2d 448 (1978) ............................................................................... 17

*Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp.,*
    No. 09 Civ. 8918 (DLC), 2010 WL 2900048 (S.D.N.Y. July 20, 2010) ................................... 22

*Walter v. Bauer,*
    109 Misc.2d 189, 439 N.Y.S.2d 821 (1981) ............................................................................ 16

*Winter v. G.P. Putnam's Sons,*
    938 F.2d 1033 (9th Cir. 1991) ............................................................................................ 15, 16

*Wolkstein v. Morgenstern,*
    275 A.D.2d 635, 439 N.Y.S.2d 821 (1st Dep't 2000) .............................................................. 28

*Wright v. Green Tree Servicing LLC,*
    No. 1:14-CV-08493 (ALC), 2016 WL 4098404 (S.D.N.Y. July 25, 2016),
    *aff'd,* 2017 WL 1207567 (2d Cir. Apr. 3, 2017) ....................................................................... 5

*Wynn v. AC Rochester,*
    273 F.3d 153 (2d Cir. 2001) ..................................................................................................... 23

*Young-Wolff v. McGraw-Hill Cos.*,
    No. 13-CV-4372 (KMW)(JCF), 2014 WL 349711 (S.D.N.Y. Jan. 31, 2014) .......................... 20

*Zeran v. America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ................................................................. 7, 8, 14

**Other Authorities**

17 U.S.C. § 411 (2005) ........................................................................ 21

17 U.S.C. § 512 (2005) ........................................................................ 21

47 U.S.C. § 230 (2014) ........................................................................ 29

47 U.S.C. § 230(b) (2014) ...................................................................... 7

47 U.S.C. § 230(b)(5) (2014) ................................................................... 8

47 U.S.C. § 230(c)(1) (2014) ................................................................... 7

47 U.S.C. § 230(c)(3) (2014) ................................................................... 7

47 U.S.C. § 230(f)(2) (2014) ................................................................... 9

47 U.S.C. § 230(f)(3) (2014) .................................................................. 10

Fed. R. Civ. P. 12(b)(6) ....................................................................... 6

Fed. R. Civ. P. 9(b) ...................................................................... 23, 30

N.Y. C.P.L.R. § 214(2) (McKinney 2003) ......................................................... 25

N.Y. Gen. Bus. Law § 349 (McKinney 2012) ....................................................... 25

N.Y. Gen. Bus. Law § 350 (McKinney 2012) ....................................................... 25

N.Y. Gen. Bus. Law § 350-a (McKinney 2012) ..................................................... 25

Rest. (Third) of Torts: Prod. Liab. § 19 (Am. Law Inst. 1998) .............................. 15, 16

## PRELIMINARY STATEMENT

Plaintiff's claims against Grindr all arise from the allegation that Plaintiff's former boyfriend, Oscar Juan Carlos Gutierrez ("JC"), is using Grindr's dating application ("Grindr App" or the "App") to impersonate him and send men to Plaintiff's home and place of work expecting to have sexual encounters, causing Plaintiff embarrassment, fear, and distress. These claims seek to hold Grindr liable for JC's content and are thus barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), which immunizes interactive computer services like Grindr from suit or liability for publishing content (messages, profiles, etc.) created by third parties.

In his Amended Complaint, Plaintiff has attempted to plead around the CDA by re-phrasing allegations to create the appearance that Grindr—and not JC—is causing these events. A full reading of the Amended Complaint, the original complaint, Plaintiff's papers seeking a restraining order, and Plaintiff's counsel's statements in open court make clear: JC, not Grindr, is the villain in this story.

Plaintiff also tries to plead around the CDA by alleging that the Grindr App is a defective product, in essence, arguing that Grindr has not employed sufficient technology and resources to block or ban JC to his satisfaction. But the CDA squarely prohibits claims based on an interactive computer service's failure to police the content of third parties. Indeed, if a plaintiff can plead around the CDA by claiming that an interactive computer service is a defective product because it does not employ certain technology to block third party content, it would eviscerate the broad immunity Congress created in Section 230.

Plaintiff's claims also fail because the Amended Complaint does not allege facts demonstrating any viable claim for relief against Grindr. The five products liability claims fail

because courts have refused to extend the law of products liability to websites and other intangible services. These and the other claims also fail because they rest on three theories, all without merit: (1) that Grindr is obligated to police the App for JC, even though Congress explicitly stated that interactive computer services have no such obligation; (2) that if Grindr had warned him that another user might one day harass him, Plaintiff would not have used the App or met JC; or (3) that Grindr promised to protect him from JC or anyone else who might abuse the Grindr App, even though Plaintiff is no longer a Grindr user. The fourteenth claim, a late-added copyright infringement claim, lacks the factual support necessary to sustain a claim, even at the pleading stage. The Amended Complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

### The Grindr App[1]

The Grindr App is a digital dating and social networking application designed to provide a platform for gay and bisexual men to connect, based on proximity and with a degree of privacy, to protect users who are discrete or who risk harassment, discrimination, or legal repercussions for their sexual orientation. *See* Am. Compl. ¶ 21. On the App, Grindr users can create profiles, which may include photographs, personal information, dating preferences, or links to social media accounts; view other users' profiles, listed in order of proximity; and, if interested, exchange messages with other users. *Id.* at ¶¶ 27, 31; Orig. Compl. ¶ 10. The Grindr App, like many other smartphone apps for dating, shopping, restaurant reviews, etc., asks each user to allow access to his smartphone's geo-location (longitude and latitude). *See* Am. Compl.

---

[1] The Court can consider the App and how it functions because the App is incorporated into the Amended Complaint by reference and central to Plaintiff's allegations. *See Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (Caproni, J.) ("...the website is not only incorporated by reference in the Complaint but is at the center of Plaintiffs' allegations, so the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss."); *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.")

1971573

¶¶ 23-24.  Based on this information, the App automatically displays a scrolling list of profiles, created by other users who have also allowed access to their locations, based on geographic proximity.  *Id.* at ¶¶ 23-24, 28, 31-33.  If the user allows, the App shows the distance between two users (*e.g.*, a number of feet or miles away).  It does not provide precise locations such as street addresses, apartment numbers, or even direction from the user, nor could it based on the longitude and latitude received from the smartphones.

Users may view other profiles, "favorite" profiles of interest, or "block" unwanted profiles.  Am. Compl. ¶ 31.  The App also allows users to sort profiles by "type" so that, for example, a user who prefers Jocks would see only profiles of users who self-identified as "Jocks."  *See id.*  Grindr does not assign a type for users or suggest introductions or "matches."  If users wish to interact, they can send direct messages to other users ("chat"), including pictures, text messages, or an image of their location (shown by a "dropped pin").  *Id.*  No information is sent from one user to another unless a user chooses to open the App in a given location, provide profile information, and then send chat messages or location information to another user.  *Id.*

### Plaintiff's Allegations

Plaintiff first used the Grindr App in May 2011, nearly six years ago.  Orig. Compl. ¶ 28; Am. Compl. ¶ 46.  Plaintiff disabled his account in November 2015, after he met JC through the App and the two began dating.  Am. Compl. ¶ 48.  Plaintiff has repeatedly stated that he no longer uses the App.  *Id.*; Orig. Compl. ¶ 29; Transcript of Hearing, Feb. 22, 2017, 4:10-11.  Plaintiff claims that since he and JC broke up (and for a short time before), JC has operated a campaign of harassment against him, creating profiles impersonating Plaintiff on the Grindr App, chatting with other Grindr users, and inviting those users to sexual encounters at Plaintiff's home or work, often with the promise of violent or aggressive sex.  Am. Compl. ¶¶ 5, 9, 49-54.

-3-

Plaintiff alleges that he is "subject to humiliation" and afraid of unwanted visitors, given expectations allegedly set by JC's messages. *Id.* at ¶¶ 95-96. Plaintiff alleges no physical injury.

Plaintiff has propounded a wide range of improbable claims, from products liability to fraud to promissory estoppel, all based on the same factual allegations: (1) that Grindr has failed to block or remove JC's impersonating profiles, messages, or photographs, Am. Compl. ¶ 44; (2) that had Grindr warned Plaintiff in May 2011 that another user might later harass him, he would not have joined Grindr, Transcript 4:17-25; and (3) that Plaintiff joined Grindr because of its Terms of Use,[2] which, he claims, promised to protect him from bad actors, Am. Compl. ¶¶ 40-41.[3] The Amended Complaint also adds a copyright infringement claim based on Grindr's alleged failure to stop JC's use of certain photographs in impersonating profiles. The Amended Complaint nowhere indicates when and where these photographs appeared on the App and is another unsupportable demand that Grindr police the App to Plaintiff's satisfaction.

### Plaintiff's Attempts to Evade the CDA

Throughout the Amended Complaint, in a misleading attempt to plead around the CDA, Plaintiff has replaced "JC" with "Grindr" or re-worded original allegations in the passive voice to avoid identifying JC as the actor. Plaintiff's fiction—in which the App, not JC, directs users to Plaintiff's home—is not supported by the factual allegations in the Complaint, the basic functioning of the Grindr App, or Plaintiff's previous pleadings and representations to the

---

[2] The Declaration of Jacquelyn Schell, filed contemporaneously, attaches copies of Grindr's current Terms of Use (Ex. A; hereinafter, "Terms of Use"); Plaintiff's purported "DMCA notice" (Ex. C), and Mr. Waxman's email response (Ex. D). These documents may be considered because they are referenced and relied upon in the Amended Complaint and therefore incorporated by reference. *See Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

[3] Specifically, Plaintiff alleges the following counts: (I) Products Liability – Defect in Design; (II) Products Liability – Defect in Manufacture; (III) Products Liability – Defect in Warning; (IV) Negligent Design; (V) Negligent Failure to Warn; (VI) Negligence; (VII) Copyright Infringement; (VIII) Promissory Estoppel; (XI) Fraud; (X) Violation of N.Y. G.B.L. § 349 (Deceptive Business Practices); (XI) Violation of N.Y. G.B.L. §§ 350, 350-a (False Advertising); (XII) Intentional Infliction of Emotional Distress; (XIII) Negligent Infliction of Emotional Distress; and (XIV) Negligent Misrepresentation.

-4-

Court.[4]  This strategic re-pleading cannot undo countless judicial admissions that JC, not Grindr, created the impersonating information or messages directing individuals to Plaintiff's home:

- "Starting in October, 2016 Plaintiff's then-recent ex-boyfriend began using Grindr to impersonate Plaintiff." Am. Compl. ¶ 49; *id.* at ¶¶ 50-51 (referencing impersonating profiles).

- "Direct messages from Grindr users ... repeatedly use the same words and phrases." *Id.* ¶ 80; *id.* at ¶ 6 (referencing the scheme "brought by a Grindr user").

- "The impersonating accounts have repeatedly used the same photographs of Plaintiff." *Id.* at ¶ 79;

- "JC is creating fake accounts and all the other users who are using Grindr are privy to that geolocation information." Transcript 7:17-19.

- "JC puts in the address in Grindr." *Id.* at 8:16.

- "JC began impersonating Plaintiff on Grindr to chat with other users..." Orig. Compl. ¶ 30.

- "The most pernicious and relentless of JC's tactics to destroy Plaintiff was through creating Grindr profiles impersonating Plaintiff and making endless appointments for sexual encounters between Plaintiff and strangers." *Id.* at ¶ 32. *see also* ¶¶ 31, 33-34.

- "All visits were arranged by JC impersonating Plaintiff on the Grindr app." *Id.* ¶ 36.

The Amended Complaint's attempts to cast Grindr, rather than JC as the bad actor are most clearly belied by Plaintiff's requested restraining order, which did not seek to stop *any* conduct by Grindr, but rather, asked the Court to compel Grindr to "disable ... impersonating accounts under the control of Oscar Juan Carlos Gutierrez and/or associated with [him]" and "prohibit[] Grindr from allowing" such profiles. *See* Proposed TRO (Doc. 1-5).

---

[4] "[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits." *Poindexter*, 2012 WL 1027639 at *2; *Wright v. Green Tree Servicing LLC*, 2016 WL 4098404, at *1 (S.D.N.Y. July 25, 2016) (quoting same), *aff'd*, 2017 WL 1207567 (2d Cir. Apr. 3, 2017). There is some disagreement among courts on this rule, but Plaintiff has also admitted to the fact that JC, not Grindr, creates the messages and directs the users at issue in the TRO and supporting papers (incorporated by reference and part of the judicial record) and at the hearing on February 22. Moreover, Plaintiff has not alleged facts plausibly suggesting that the Grindr App independently directs users to Plaintiff's home or work. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"). Determining whether a complaint satisfies this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

-5-

1971573

### The Geo-Locating Allegations

Plaintiff's focus on Grindr's "geo-locating" function is another distraction from the content source and bad actor at issue. As an initial matter, Plaintiff is no longer a Grindr user, so Grindr does not have access to his location. Am. Compl. ¶ 48; Transcript 4:10-11 ("Our client...is not using the app."). Moreover, the App's geo-locating function only sorts users by proximity and, if the user allows, displays his relative distance (*e.g.*, "104 feet away"). *See* Orig. Compl. ¶ 10; Am. Compl. p. 14 (screen shot). The App does not, as Plaintiff now alleges, "direct" users to one another, nor does it display a user's street address, "apartment building," "unit door" number, "window," or place of employment—all information Plaintiff alleges the unwanted visitors had. Am. Compl. ¶¶ 59-64. Nor could it, as the App relies solely on longitude and latitude to determine location. *Id.* at ¶ 24. The only way users could have this specific information or be directed to Plaintiff's home or work is through content provided by JC, such as direct messages, which Plaintiff admits JC provides. *Id.* at ¶ 80 (acknowledging that address and buzzer information are provided through chats and direct messages); Orig. Compl. ¶ 35 ("JC would .... chat with other users through the app to arrange sex dates between Plaintiff and these strangers."); Transcript 8:1-5 (agreeing that, "The software only knows where Mr. Herrick is by virtue of the fact that JC has told the application where Mr. Herrick is").

## <u>LEGAL STANDARD</u>

In reviewing motions to dismiss under Rule 12(b)(6), the Court should determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must "plead[] factual content"— more than "[t]hreadbare recitals of the elements" or "conclusory statements"—that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court must accept all well-pleaded facts as true, it need not accept as true legal conclusions, and "a formulaic recitation of the elements of a cause of action will not do…." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE BARRED AS A MATTER OF LAW BY THE COMMUNICATIONS DECENCY ACT

**A.     The CDA Immunizes Interactive Computer Service Providers Like Grindr From Claims Based On Content Created By Third Parties**

In enacting the CDA, Congress created broad federal immunity for claims against online service providers such as Grindr based on content created by users:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see Federal Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016).

CDA immunity is absolute and applies from the earliest stages of litigation.  47 U.S.C. § 230(c)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *Green v. America Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003) (affirming grant of motion to dismiss based on CDA); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105-06 (9th Cir. 2009) (same); *Gibson v. Craigslist, Inc.*, 2009 WL 1704355, at *1 (S.D.N.Y. June 15, 2009) (dismissing complaint).

Congress enacted Section 230 intending "to preserve the vibrant and competitive free market that currently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b); *see Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). As the Court stated in *Zeran*, 129 F.3d at 331:

Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*See also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18-19 (1st Cir. 2016) ("This preference for broad construction recognizes that websites that display third-party content may have an infinite number of users generating an enormous amount of potentially harmful content, and holding website operators liable for that content would have an obvious chilling effect in light of the difficulty of screening posts for potential issues.") (citation and internal quotation marks omitted), *cert. denied*, 137 S. Ct. 622 (2017).

Courts have recognized that bad actors may try to use the internet or developing technologies for harm, but as explained by the Fourth Circuit:

None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability. While Congress acted to keep government regulation of the Internet to a minimum, it also found it to be the policy of the United States "to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." *Id.* § 230(b)(5). Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.

*Zeran*, 129 F.3d at 330–31.

Consistent with its text and purpose, "[t]here has been near-universal agreement that section 230 should not be construed grudgingly." *Backpage.com*, 817 F.3d at 18-19. It is now beyond dispute that website operators "are shielded from liability arising from defamation and other state-law claims that are premised on posts of, or links to, third-party content." *Seldon v. Magedson*, 2012 WL 4475274, at *16 (S.D.N.Y. July 10, 2012), *report and recommendation*

-8-

*adopted*, 2012 WL 4475020 (S.D.N.Y. Sept. 28, 2012). "The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party....The ultimate question...does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another." *Backpage.com*, 817 F.3d at 19. "[C]lose cases ... must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites." *Jones v. Dirty World Entm't*, 755 F.3d at 408 (citation omitted).

"Courts engage in a three part inquiry when determining the availability of immunity under the CDA, *i.e.*, '(i) whether Defendant is a provider of an interactive computer service; (ii) if the postings at issue are information provided by another information content provider; and (iii) whether Plaintiff's claims seek to treat Defendant as a publisher or speaker of third party content." *Gibson*, 2009 WL 1704355 at *3 (citation omitted).

## B.      Grindr Is An "Interactive Computer Service"

This Court and another federal court have already ruled that Grindr is an interactive computer service ("ICS"), defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server...." 47 U.S.C. § 230(f)(2); *see Herrick v. Grindr, LLC*, 2017 WL 744605, at *5 (S.D.N.Y. Feb. 24, 2017) ("Order"); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015). Plaintiff does not dispute this. Transcript 23:13-24:7; Am. Compl. ¶ 2.

## C.      A Separate "Information Content Provider" Provided The Content At Issue

The second prong of the CDA analysis is whether the content at issue was provided by the defendant or by a separate "information content provider." An ICS may not be held liable for

content provided by any other "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Contrary to Plaintiff's allegations, an ICS does not become an information content provider by "merely taking action that is necessary to the display of allegedly illegal content," *Jones,* 755 F.3d at 410-11, or by "contribut[ing] to the production or presentation of content." Order at *4. An ICS only loses its immunity if it assists in the "development of what [makes] the content unlawful." *LeadClick Media, LLC,* 838 F.3d at 174 (quoting *FTC v. Accusearch Inc.,* 570 F.3d 1187, 1197 (10th Cir. 2009)).

Courts have consistently ruled that sorting, filtering, and aggregating functions, which organize information based on user or third-party input, are "neutral tools" that do not create new content or destroy CDA immunity. *E.g., Saponaro,* 93 F. Supp. 3d at 323 (dismissing claims that Grindr's drop-down menus and profile questions constituted creation of new content); *Carafano v. Metrosplash.com. Inc.,* 339 F.3d 1119, 1125 (9th Cir. 2003) (dismissing claims against dating website based on its "sorting" of users; noting that an ICS "receives full immunity regardless of the specific editing or selection process"); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1172 (9th Cir. 2008) ("Of course, any classification of information, like the sorting of dating profiles by the type of relationship sought in *Carafano,* could be construed as 'develop[ment]' under an unduly broad reading of the term. But, once again, such a broad reading would sap section 230 of all meaning."); *O'Kroley v. Fastcase Inc.,* 2014 WL 2881526, at *2 (M.D. Tenn. June 25, 2014) (Google's search engine results were "automated editorial acts" and "did not make Google an information content provider" or "take away Google's statutory immunity from Plaintiff's claims"), *aff'd,* 831 F.3d

-10-

352 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 639 (2017); *Murawski v. Pataki*, 514 F. Supp. 2d

577, 591 (S.D.N.Y. 2007) (dismissing claim based on search engine's automated results).

Plaintiff points to three functions that he alleges constitute creation of content, all three of

which are exactly the sort of "neutral tools" discussed above.   First, Plaintiff alleges that Grindr's

geo-locating function amounts to creation of content.   The geo-locating function, however,

simply receives information provided by users (who allow access to their smartphone location)

and sorts or aggregates users based on proximity.   It "is not what makes the false profiles

tortious."  Order at *4; *see also O'Kroley*, 2014 WL 2881526 at *2 (automated sorting functions

maintained immunity).   Moreover, Plaintiff has acknowledged, and the Amended Complaint

makes clear, that any information or content directing users to Plaintiff is not coming from

Grindr's geo-locating function[5] but from JC, either (1) by "manipulating the geo-physical

settings to correspond with Plaintiff's home and work addresses;"[6] or (2) "chat[ting] with other

users" and arranging for visitors to go to Plaintiff's home or work.   Transcript 8:1-5; Am.

Compl. ¶ 80; Orig. Compl. ¶ 35.   In either situation, the unlawful content (false locations or

instructions) is created exclusively by JC.   Indeed, Plaintiff has acknowledged that he no longer

uses Grindr, so the App does not have his location information.

Similarly, Plaintiff argues that Grindr "creates" content by providing a feature that allows

users to create and share a map showing their location, but again, Grindr does not create this

information—it merely displays the location a user provides by allowing access to his location.

*See* Am. Compl. p. 14.   Numerous apps provide a similar feature, to simplify the process of

providing addresses or providing directions.   This "neutral assistance," used by numerous apps to

---

[5] Indeed, this information could only have come from JC, as the Grindr App and geo-locating function do not provide street addresses, apartment numbers, or other specifics that Plaintiff alleges the unwanted visitors had. *E.g.*, Am. Compl. ¶¶ 55-57, 59-64, 80.
[6] There are no factual allegations suggesting JC manipulated geo-physical locations; this is pure speculation.

allow users to easily provide directions, is not what makes JC's actions on the App tortious. *See* Order at *4. Plaintiff does not allege how this feature relates to him, as he does not use the App. Even assuming the truth of the fanciful allegation that JC can provide a dropped pin representing Plaintiff's location even if JC is nowhere near that location, the content at issue—the "dropped pin"—would be created exclusively by JC, not Grindr.

Finally, Plaintiff tries to cast Grindr as a "content creator" because the App provides users with "types" that they can select or identify as, if they so choose. The court in *Saponaro v. Grindr* specifically rejected this argument, ruling that "questions to be answered including a profile, the posting of pictures, and dropdown menus suggesting content" do not constitute content development. 93 F. Supp. 3d at 324. *See also* Order at *4 ("All of these functions appear to be available equally to all Grindr users, and they are quintessential examples of 'neutral assistance.'" (quoting *Roommates.com*, 521 F.3d at 1169)). Filters and sorting functions fall outside the CDA only where the questions themselves are illegal or "materially contribute" to illegality. *See Roommates.com, LLC*, 521 F.3d at 1174 (refusing CDA immunity where roommate-search website "participate[d] in developing the alleged illegality" by *requiring* information that was prohibited by the Fair Housing Act).

Here, of course, there is no allegation that any "type" (*e.g.*, "jock" or "nerd" or "bear") is inherently illegal or is in any way contributing to JC's harassment. This is simply a transparent attempt to cast Grindr as a content provider, exactly the sort of creative lawyering warned against by the Ninth Circuit in *Roommates.com*:

> ...there will always be close cases where a clever lawyer could argue that *something* the website operator did encouraged the illegality. Such close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties.

521 F.3d at 1174 (emphasis in original); Order at *3 ("past cases suggest strongly that Plaintiff's attempt to artfully plead his case in order to separate the Defendant from the protections of the CDA is a losing proposition").

**D.    Plaintiff Seeks To Hold Grindr Liable As The Publisher Of Third-Party Content**

Plaintiff's claims all seek to hold Grindr liable for content created and provided by JC. Specifically, Plaintiff seeks to hold Grindr liable for allegedly failing to prevent or police JC's behavior by blocking or removing JC's impersonating messages, profiles, and photographs. But, "[d]eciding whether or not to remove content or deciding when to remove content falls squarely within ... a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski*, 514 F. Supp. 2d at 591; *see also Gibson*, 2009 WL 1704355 at *4 (claims based on decisions to "block, screen, or otherwise prevent the dissemination of a third party's content" seek to hold the defendant liable in its capacity as a "publisher" and are barred by the CDA). "[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another." *Barnes*, 570 F.3d at 1101-02.

Courts across the country have dismissed complaints based on Plaintiff's failure to block or remove theory, ruling consistently that there is no obligation for an ICS to "police" its users or their content, as monitoring or removing content is a protected, "traditional publisher function." *E.g., Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27 (2d Cir. 2015) (affirming dismissal of claims against GoDaddy.com alleging that website "refused" to take down defamatory posts); *Gibson*, 2009 WL 1704355 at *3 (dismissing claims that Craigslist was liable for failing to remove or police the content of user's advertisements); *Barnes*, 570 F.3d at 1101-02 (dismissing claims based on allegations that Yahoo! failed to adequately police or stop plaintiff's ex-

-13-

boyfriend from creating profiles impersonating her); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007) (rejecting argument that MySpace negligently failed to take adequate safety measures to prevent users from preying on minors), *aff'd*, 528 F.3d 413 (5th Cir. 2008); *Carafano*, 339 F.3d at 1125 (affirming dismissal of claims against dating website based on third party's posting of profiles impersonating actress and providing home address and phone number); *Backpage.com*, 817 F.3d at 18-19 (affirming dismissal of claims against online classified ad forum, based on publication of advertisements from third parties offering sex with underage victims); *Zeran*, 129 F.3d at 335 (affirming dismissal of claims based on failure to remove false postings impersonating plaintiff and directing buyers to plaintiff to place orders for offensive t-shirts bearing slogans relating to the 1995 Oklahoma City bombing,); *Manchanda v. Google*, 2016 WL 6806250, at *3 (S.D.N.Y. Nov. 16, 2016) (dismissing claims demanding that search engines de-index or remove websites from results).

## POINT II

### THE COMPLAINT'S FACTUAL ALLEGATIONS DO NOT STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if it were not barred by the CDA, the Amended Complaint should be dismissed because the factual allegations do not state any legally-viable claim for relief.

### A.    Plaintiffs Allegations Do Not State Product Liability Claims (Counts I-V)

The Amended Complaint puts forward five different theories of product liability (Counts I-V). These claims all fail. They are a thinly-veiled attempt to evade CDA immunity by attempting to frame the App—an interactive computer service used to exchange information—as a product. If every plaintiff aggrieved by third party content on an ICS could evade the CDA by asserting that the ICS is a defective product because it does not employ certain technology and resources to block such content, it would eviscerate the immunity protections of the CDA. In

-14-

any event, the App does not constitute a "product" within the meaning of product liability law.

### 1.       The Grindr App Is Not A "Product" Within The Meaning Of The Law

The law of products liability does not apply to the Grindr App because (i) the App is not a tangible "product"; and (ii) it provides a service.  Courts that have considered whether an interactive computer service, such as a website or an app, is a product for purposes of products liability law have held that it is not.  *See, e.g., Intellect Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273, at *7 (Sup. Ct. N.Y. Cnty. Sept. 11, 2009) ("this court is not persuaded that this website in the context of plaintiff's claims is a 'product' which would otherwise trigger the imposition of strict liability"); *James v. Meow Media, Inc.*, 300 F.3d 683, 700-701 (6th Cir. 2002) (plaintiff "has failed to demonstrate a prior requirement, that the video games, movies, and internet sites are 'products' for purposes of strict liability").

"Products liability law is geared to the tangible world.  The language of products liability reflects its focus on tangible items....The purposes served by products liability law also are focused on the tangible world." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991); *see also Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1278 (D. Col. 2002) ("Plaintiffs fail to appreciate the critical distinction between intangible properties and tangible properties for which strict liability can be imposed."); *see* Rest. (Third) of Torts: Prod. Liab. § 19 ("A product is tangible personal property distributed commercially for use or consumption.").

Courts across the country have refused to apply product liability law to other intangible items. *See Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 324–25 (S.D.N.Y. 2006), *aff'd*, 279 Fed. App'x 40 (2d Cir. 2008) (rejecting products liability claim against diet book because diet allegedly caused heart issues); *Sanders*, 188 F. Supp. 2d at 1264 (video game makers and movie produces could not be held liable under product liability theory for harm allegedly caused by the violent content of games and movies they produced); *Winter*, 938 F.2d at

-15-

1034 (reader could not recover against book publisher on product liability claim alleging that book was defective because it mistakenly instructed reader to ingest poisonous mushrooms).

"When dealing with ideas and images, courts have been willing to separate the sense in which the tangible containers of those ideas are products from their communicative element for purposes of strict liability." *Meow Media*, 300 F.3d at 701; *see also Walter v. Bauer*, 109 Misc.2d 189, 191 (1981) (*"Strict liability in tort is meant, however, to protect the customer from defectively produced merchandise. [A textbook] cannot be said to be a defective product, for the infant plaintiff was not injured by use of the book for the purpose for which it was designed, *i.e.*, to be read"). This distinction is essential because, "[i]mposing liability for physical injuries caused by the ideas contained in a book would 'inhibit those who wish to share thoughts and theories,' for no author would write on a topic that could potentially result in physical injury to the reader." *Gorran*, 464 F. Supp. 2d at 324 (quoting *Winter*, 938 F. 2d at 1035).

Here, Plaintiff objects not to the functioning of the App, *per se*, but to the fact that the App allegedly fails to block or screen JC's "words and images," namely, profile information, photographs, and chat messages impersonating Plaintiff and directing users to his home. *See Meow Media*, 300 F.3d at 701. Plaintiff's objection, as in *Gorran* or *Meow Media*, is to content, not the functioning, design, or manufacture of the App.

The App is not a product for the additional reason that it provides a "service" in allowing users to communicate with one another. *See* Rest. (Third) of Torts: Prod. Liab. § 19 ("Services, even when provided commercially, are not products."); *see also Gorran*, 464 F. Supp. 2d 324.

### 2.    *Plaintiff Has Not Alleged A Flaw Or Defect In The App (Counts I, II, IV)*

For the design and manufacturing based claims, Plaintiff must allege a defect in the App that was "a substantial factor in bringing about the injury or damage" and show that, "at the time of the occurrence, the product must have been used for the purpose and in the manner normally

intended or in a manner reasonably foreseeable." *Amatulli by Amatulli v. Delhi Constr. Corp.*, 77 N.Y.2d 525, 532 (1991). Plaintiff does not identify any defective condition in the App itself; to the contrary, he alleges that it functions as intended, but that JC has "weaponized" the App to harass Plaintiff. Am. Compl. ¶¶ 66, 117. As this Court found, the problem is not with the App; "[t]he problem, of course, is that the product is only dangerous in combination with the sort of false content JC has created." Order, 2017 WL 744605 at *4 n.7. Since the CDA does not require an ICS to "block, screen, or otherwise prevent the dissemination of a third party's content," it cannot be defective for the app not to have features which Plaintiffs claims are necessary to block JC's content. *Gibson*, 2009 WL 1704355 at *4.

### 3.    *Plaintiff Has Not Alleged A Foreseeable Risk Or Duty To Warn (Counts III, V)*

For Count III, Plaintiff has not alleged a "degree of danger" that a reasonable person would not be aware of and that necessitates a given warning, as required to state a strict liability claim under New York law. *See Landrine v. Mego Corp.*, 95 A.D.2d 759 (1st Dep't 1983) ("No duty to warn exists where the intended or foreseeable use of the product is not hazardous."); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 65 (4th Dep't 1980) ("Yet, there is no necessity to warn a consumer already aware through common knowledge or learning of a specific hazard."). The absence of a duty to warn can be decided by a court as a matter of law. *Lancaster*, 75 A.D.2d at 65; *see also Torrogrossa v. Towmotor Co.*, 44 N.Y.2d 709, 711 (1978).

The Grindr App is not an inherently dangerous product. Its function is to allow users to communicate with one another, with a degree of anonymity, in order to protect against outside parties who might discriminate against or harm users merely because of their homosexuality. To the extent there is a risk of encountering someone through the App who may turn out to be a bad actor, that risk is not unique to or created by Grindr's App. This is the same risk encountered

-17-

when meeting new people in bars, restaurants, or any public forum—a risk that any reasonable consumer would understand. The only distinction is that the forum created by Grindr's App is online, and this distinction does not affect the risk. Even if it did, Grindr's Terms of Use put Plaintiff on notice of possible risk. *E.g.*, Terms of Use §§ 1.3, 12.3. As the alleged danger springs from the bad actor—not the Grindr App—Grindr owes no duty to warn Plaintiff.

### 4. The Insufficient "But For" Causation Is Fatal To The Failure To Warn Claim

In his failure to warn claims, Plaintiff alleges that, if the App contained certain warnings, he would never have downloaded the App, would not have met JC, and would not be subject to JC's harassment years later. Am. Compl. ¶ 117. This "but for" causation is insufficient. Products liability claims require proximate causation, and Plaintiff's claims are far too attenuated. *Bravman v. Baxter Healthcare Corp.*, 984 F.2d 71, 75 (2d Cir. 1993) ("A plaintiff proceeding under a failure-to-warn theory in New York must demonstrate that the failure to warn adequately of the dangers of a product was a proximate cause of his or her injuries.").

## B.    Plaintiff Has Not Stated A Claim For Negligence (Count VI)

"Generally, in a negligence action, a plaintiff must establish that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of the breach." *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998). "In the absence of a duty, as a matter of law, no liability can ensue." *Gonzalez by Gonzalez v. Pius*, 138 A.D.2d 453, 454 (2d Dep't 1988).

"Common law in the State of New York does not impose a duty to control the conduct of third persons to prevent them from causing injury to others. This is so ... even where as a practical matter defendant could have exercised such control." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156-157 (2d Cir. 1997). The New York Court of Appeals has "soundly rejected" theories of negligence based on failure to "employ[] greater safeguards to ward against

-18-

fraudulent activity" as "exceeding New York's common law negligence obligations." *Okeke v. Cars.com*, 40 Misc.3d 582, 588 (Civ. Ct. Queens Cnty. 2013) (dismissing negligence claim, also barred by the CDA, that website should have increased protections against fraudulent advertisements) (citing *Lunney v. Prodigy Servs. Co.*, 94 N.Y.2d 242, 251 (1999)).[7]

Plaintiff, who is no longer a Grindr user and shares no contractual with Grindr, has not alleged any plausible reason why Grindr owed him a legally-viable duty. He states summarily that duties were owed, *e.g.*, duties of reasonable care in operating its application, to screen, monitor, or ban abusive members, or to warn Plaintiff of the risk JC posed. Am. Compl. ¶¶ 132-34. But these conclusory allegations do not support the existence of any such duty, particularly in light of the clear refusal to create any such duty in New York common law and the CDA.

Plaintiff also cannot show that Grindr was the cause of the harm allegedly incurred or that it would not have occurred absent Grindr's breach. *See Gordon v. Eastern Ry. Supply, Inc.*, 82 N.Y.2d 555, 562 (1993) ("An independent intervening act may constitute a superseding cause, and be sufficient to relieve a defendant of liability, if it is of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them"). The issue here is not Grindr's actions or lack thereof, but JC's intervening, criminal acts which are so extraordinary and attenuated from Grindr's conduct that Grindr cannot possibly held responsible for them. *See id.*

## C.  Plaintiff Has Not Stated A Claim For Copyright Infringement (Count VII)

To allege a copyright infringement, Plaintiff must identify: (1) original works subject to a copyright claim; (2) ownership of copyrights in those works; (3) "that the copyrights have been registered in accordance with the statute;" and (4) "'by what acts during what time' the

---

[7] As explained by the New York Court of Appeals, the events in *Lunney* took place before the CDA went into effect. The Court noted that the CDA would have applied, if in effect but did not need to reach the question of retroactive application because New York law also barred the claim. 94 N.Y.2d at 251.

defendant infringed the copyright." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014) (quoting *Palatkevich v. Choupak*, 2014 WL 1509236, at *6 (S.D.N.Y. Jan. 24, 2014)); *Plunket v. Doyle*, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (dismissing claim for failure to identify works at issue, infringing acts, or time period of acts); *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (dismissing complaint for failing to identify original works subject to copyright claim).

First, Plaintiff fails to allege "by what acts during what time the defendant infringed the copyright." *Young-Wolff v. McGraw-Hill Cos.*, 2014 WL 349711, at *5 (S.D.N.Y. Jan. 31, 2014) (dismissing claim for failing to allege "during what time the defendant infringed the copyright") (citation omitted); *DiMaggio v. International Sports Ltd.*, 1998 WL 549690, at *1 (S.D.N.Y. Aug. 31, 1998) ("courts have required that particular infringing acts be alleged with specificity") (citations omitted); *Palatkevich*, 2014 WL 1509236 at *6 (dismissing claim that failed to identify infringing acts); *Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) ("the complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement"). Plaintiff merely alleges that that, "[u]pon information and belief, some of the Infringing Use took place after the Copyrighted Works were registered." Am. Compl. ¶ 152. Without allegations of specific acts or dates, Plaintiff fails to state a plausible claim of copyright infringement.

As Plaintiff acknowledges that Grindr is not responsible for posting the allegedly copyrighted works, the claim cannot be for direct infringement. *See BWP Media USA, Inc.*, 69 F. Supp. 3d at 354 ("The fact that Defendants own the sites, standing alone, does not create copyright liability for the actions of third parties."). Yet Plaintiff has not alleged facts supporting the elements of either contributory or vicarious copyright infringement. *See id.* at 355-358

(requiring, *inter alia*, allegations of inducement or material contribution for contributory infringement or a financial benefit caused by the alleged infringement for vicarious liability).

In fact, Plaintiff alleges no facts at all to suggest that "Grindr has allowed Plaintiff's Copyrighted Works to be reproduced, displayed, and distributed." Am. Compl. ¶ 150; *see Plunket*, 2001 WL 175252 at *5; *Iqbal*, 556 U.S. at 678 (threadbare and conclusory allegations are insufficient). Neither the Amended Complaint nor the purported "take-down notice" provide information regarding a location on the App where copyrighted works allegedly appeared.[8] Grindr's counsel immediately responded to the DMCA "take-down notice" by asking Plaintiff's counsel where on the App the allegedly Copyrighted Works appeared, but Plaintiff's counsel did not respond. Schell Decl. Ex. C, D. Thus, there is no basis for claiming that Grindr knew of or could have stopped any alleged infringements.

Finally, the copyright claim should be dismissed because the Amended Complaint does not demonstrate a valid, pending copyright, as required by the Copyright Act. *See* 17 U.S.C. § 411; *BWP Media USA Inc.*, 69 F. Supp. 3d at 353 (discussing general requirement that plaintiff hold a registered copyright prior to bringing suit).[9] The "registration" numbers provided appear, based on the format and inability to locate these numbers in a search of the Copyright Office's

---

[8] Grindr is not conceding and will dispute the sufficiency of the alleged "take down notice," because *inter alia*, it failed to contain any information on the location of the alleged infringements. *See* 17 U.S.C. § 512.

[9] The Second Circuit declined to rule on whether a pending application is sufficient to bring suit, but most District Courts within this Circuit have found that a valid copyright registration is a prerequisite to suit. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (declining to rule on application versus registration, but ruling that applying after discovery and then seeking to amend was too late); *see, e.g., Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012) ("Courts in this Circuit have therefore required that a plaintiff either hold a valid copyright registration outright or have applied and been refused a registration *prior* to filing a civil claim....A pending application does not suffice.") (emphasis in original); *Patrick Collins, Inc. v. John Does 1-7*, 2012 WL 1889766, at *1 (S.D.N.Y. May 24, 2012) ("district courts in this Circuit have held that a pending application for registration does not satisfy the registration precondition of Section 411(a)"); *but see Chevrestt v. American Media, Inc.*, 204 F. Supp. 3d 629, 631 (S.D.N.Y. 2016) (allowing claim to proceed based on application). Here, Plaintiff appears to have filed an application for photographs with no known commercial value at the eleventh hour, in a desperate attempt to shoe horn this case through an exception to the CDA and onto discovery. In this sort of case, at a minimum, an application alone is insufficient. *See Psihoyos*, 748 F.3d at 125 (denying late attempt to add copyright claim based on application).

-21-

website, to be numbers for pending applications, rather than registered copyrights.  Am. Compl.

¶ 147 ("The registration numbers for the Copyrighted Works are as follows: 1-4725091321; 1-

4725091253; 1-4725091368; 1-4725091465.").

**D.      Plaintiff Has Not Stated A Claim For Promissory Estoppel (Count VIII)**

Plaintiff does not allege any of the elements necessary for a promissory estoppel claim:

"(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise;

and (3) injury to the relying party as a result of the reliance." *Underdog Trucking, LLC, Reggie*

*Anders v. Verizon Servs. Corp.*, 2010 WL 2900048, at \*6 (S.D.N.Y. July 20, 2010).  Plaintiff

fails to identify any clear and unambiguous promises made to Plaintiff when he downloaded the

App.  The Terms of Use are not promises or representations by Grindr to users, but rather,

promises and representations that a user must make to use the App.  *See* Am. Compl. ¶¶ 42(a)-

(i); Terms of Use § 8.3.1 ("You will NOT use the Grindr Services ... to stalk, harass,...").

Plaintiff also has not alleged reasonable or foreseeable reliance on the Terms of Use as

representations regarding the application's safety, nor can he.  The Terms of Use explicitly warn:

- **GRINDR IS NOT RESPONSIBLE FOR YOUR USE OF THE GRINDR SERVICES OR FOR THE ACTIONS OF OTHER USERS WITH WHOM YOU MAY EXCHANGE INFORMATION.  GRINDR DOES NOT CONDUCT CRIMINAL BACKGROUND SCREENINGS ON ITS USERS.**

- Grindr does not control the content of User Accounts and profiles. Grindr has the right, but does not have any obligation, to monitor such content for any purpose.

- You understand that when using the Grindr Services, You will be exposed to User Contents from a variety of sources, and that Grindr is not responsible for the ... safety... of or relating to such User Content. You further understand and acknowledge that You may be exposed to User Content that is inaccurate, offensive, indecent or objectionable.

- Grindr assumes no responsibility whatsoever in connection with or arising from User Content. Grindr assumes no responsibility for actively monitoring User Content for inappropriate content.

Terms of Use §§ 1.3, 10.4, 12.3, 12.4.  In light of these explicit disclaimers, Plaintiff cannot

reasonably have relied on the Terms of Use as promises to protect him.

Finally, Plaintiff's alleged injuries were not caused by the Terms of Use or any claimed reliance; his alleged injuries resulted solely from JC's "weaponization" of the App.

**E.    Plaintiff Has Not Stated A Claim For Fraud (Count IX)**

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted).   Under Rule 9(b), Plaintiff must allege "with particularity" the circumstances constituting the fraud.   Fed. R. Civ. P. 9(b); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).   Additionally, under Rule 9(b), Plaintiff must allege "facts that give rise to a strong inference of fraudulent intent," established by alleging facts either showing "that defendants had both motive and opportunity to commit fraud" or "constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness." *In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011) (citations omitted).

The fraud claim fails, first, because Plaintiff has not sufficiently identified the statements at issue.   Where the fraud claim is based on affirmative statements, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d at 197-98 (citations omitted).   Plaintiff alleges only that "Grindr made a material misrepresentation in its advertising and Terms of Service [sic] by representing itself as a safe platform that can take action against those who abuse others with its product." Am. Compl. ¶ 162.   Plaintiff does not, however, identify specific statements at issue in the Terms of Use or elsewhere.   This is unsurprising, since the Terms of Use warn users that

-23-

Grindr "is not responsible ... for the actions of other users" and "assumes no responsibility for actively monitoring User Content for inappropriate content" and "no obligation to modify or remove any inappropriate User Content." Terms of Use §§ 1.3, 12.4. Moreover, the sections of the Terms of Use cited by Plaintiff are not even representations by Grindr, but rather, agreements that users make in order to use the App. *See id.* at p. 2.

Nor has Plaintiff alleged facts showing that Grindr had both a motive and an opportunity to commit fraud or alleged facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Nakahata*, 723 F.3d at 197; *Agape*, 773 F. Supp. 2d at 298. Plaintiff has not alleged any facts whatsoever suggesting why Grindr would purposefully deceive Plaintiff about the safety of the App.

Plaintiff also has not plausibly explained how statements that the App is a safe platform, allegedly made and relied upon in 2011, are proven false when made simply because the App, in 2017, is not providing the full range of protective software that he believes it should. *See Lanzi v. Brooks*, 54 A.D.2d 1057, 1058 (3d Dep't 1976) ("[A]ny inference drawn from the fact that the expectation did not occur is not sufficient to sustain the plaintiff's burden of showing that the defendant falsely stated his intentions."), *aff'd*, 43 N.Y.2d 778 (1977).

Finally, Plaintiff has not alleged that he has been damaged as a "direct result of the defendant's wrongful actions," "independent of other causes," and "proximately caused by the defendant's conduct." *Idrees v. Am. Univ. of the Caribbean*, 546 F. Supp. 1342, 1350 (S.D.N.Y. 1982) (citations omitted). The only connection between Plaintiff's alleged injury and Grindr's alleged fraudulent representations approximately five years ago is the fact that Plaintiff would not have otherwise joined Grindr in 2011 and would not have otherwise met JC.

-24-

F.    **Plaintiff Has Not Stated Claims For Deceptive Business Practices Or False Advertising Under N.Y. G.B.L. §§ 349, 350, or 350-a (Counts X and XI)**

To state claims under N.Y. G.B.L. §§ 349, 350, or 350-a, Plaintiff must allege "'first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)); Order (quoting same). "A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance." *Merck Eprova AG*, 920 F. Supp. 2d at 425 (citation omitted).

*1.    The Claims For False Advertising And Deceptive Practices Are Time-Barred*

Claims under G.B.L. §§ 349 and 350 are subject to a three-year statute of limitations. CPLR § 214(2); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014); *Morelli v. Weider Nutrition Group, Inc.*, 275 A.D.2d 607, 608 (1st Dep't 2000). Where, as here, the claimed misrepresentations or falsehoods are "about the nature of the product itself, rather than a benefit from purchasing the product separate from the product's inherent function," the claim accrues with the purchase or use of the product. *Marshall*, 51 F. Supp. 3d at 455 (ruling that claim accrued upon purchase of allegedly defective tires, not later discovery of defect); *see People ex rel. Spitzer v. Katz*, 2007 WL 1814652, at *1 (Sup. Ct. N.Y. Cnty. June 4, 2007) ("The limitations period for claims brought under GBL § 349 is three years from the time of the deceptive act or behavior.").

Plaintiff does not clearly articulate the practice or advertisement at issue but does allege that "Grindr's deceptive false and misleading statements were made with the goal of attracting more consumers" and that "Grindr's false advertising... materially misled consumers as to the

nature, characteristics, and/or qualities of its products or services." Am. Compl. ¶¶ 171, 183. Accordingly, Plaintiff's claims would have accrued in May 2011—nearly six years ago—when he allegedly relied upon statements as to the "nature" and "characteristics" of Grindr's services and downloaded and used the product. *See Marshall*, 51 F. Supp. 3d. at 455. Both claims are thus time barred.

### 2. *Plaintiff Has Not Alleged Any Consumer-Oriented Deceptive Practice Or Misleading Advertisement*

Plaintiff has not identified the specific, misleading practice or advertisement underlying his claims or articulated why any such advertisement or practice has "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (requiring allegation of "consumer-oriented" conduct as a "threshold matter" for § 349 and § 350 claims); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) ("plaintiff must point to a specific advertisement or public pronouncement upon which he or she relied") (citation and internal quotation marks omitted). The absence of either allegation is fatal to Plaintiff's claims. *See Marshall*, 51 F. Supp. 3d at 466 (dismissing allegations of "secret warranty practice" where plaintiff "provided no factual information to plausibly suggest" that any practice existed); *Stutman*, 95 N.Y.2d at 31 (affirming dismissal of § 349 claim where plaintiffs failed to allege a misleading statement); *Richmond v. National Grid*, 2013 WL 1338870, at *3 (E.D.N.Y. Mar. 29, 2013) (dismissing Section 350 claim for failure to identify any advertisement or promotional material disseminated by defendant), *aff'd sub nom. Richmond v. National Grid, Brooklyn Union Gas Co.*, 553 Fed. App'x 56 (2d Cir. 2014).

For the Section 349 claim, Plaintiff alleges only generally that deceptive practices include "misleading and deceptive statements in promoting its products as set forth above and in its privacy policies, community guidelines, and abuse reporting mechanisms." Am. Compl. ¶ 170.

In support of his Section 350 or 350-a claim, Plaintiff alleges that false advertisements were made in "promotion, marketing, and advertising" and "in the Terms of Service." *Id.* at ¶¶ 179-80. While earlier portions of the Complaint quote sections of the Terms of Use, Plaintiff has not alleged which portion misled him, why such portion was false or misleading, or how such practice or advertising is consumer-oriented. "Plaintiff's allegations ... demonstrate, at best, a private dispute unique to Plaintiff's interests." *Richmond*, 2013 WL 1338870, at *4.

Nor has Plaintiff explained how a reasonable consumer would interpret prohibitions on user conduct or a high-level statement that Grindr "strives to create a safe space" as a representation or commitment by Grindr to use any particular software or police its users to the extent demanded by Plaintiff, particularly in light of Terms of Use §§ 1.3, 10.4, 12.3, 12.4. *Manchanda*, 2016 WL 6806250, at *5 ("allegations provide no basis on which to plausibly infer that Defendants' conduct is likely to mislead a reasonable consumer").

### 3.   *Plaintiff Has Not Alleged Any Injury Proximately Caused By Any Practice Or Advertisement*

Finally, Plaintiff has failed to allege any injury proximately caused by the unspecified misrepresentations or advertisements. Both for standing and to demonstrate causation, Plaintiff must plead "that [he] ha[s] suffered actual injury caused by a materially misleading or deceptive act or practice.... allegations of indirect or derivative injuries will not suffice." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623 (2009) (requiring more than "but for" causation); *see M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 217 (E.D.N.Y. 2010); Order, 2017 WL 744605 at *5; *King v. New York City Emps. Ret. Sys.*, 2016 WL 3996343, at *21 (E.D.N.Y. July 25, 2016) ("The third requirement, causation, requires that the act complained of be the proximate cause of the harm alleged.") (citation omitted).

As this Court has already noted, "the only connection between Plaintiff's present day

injury and Grindr's alleged misrepresentations approximately five years ago is the fact that Plaintiff would not have otherwise joined Grindr in 2011 and would not have otherwise met JC." Order, 2017 WL 744605 at *5; *see also* Am. Compl. ¶¶ 46, 186 (alleging that unspecified misrepresentations "result[ed] in his use of the Grindr product," which use began in May 2011). This allegation is, at best, that "but for" using the Grindr App, Plaintiff would not have met and later been harassed by JC.   Courts have repeatedly rejected G.B.L. claims based on such attenuated causal connections. *See, e.g., Smokes-Spirits.Com*, 12 N.Y.3d at 623.

### G.   Plaintiff Has Not Stated Claims For Intentional Or Negligent Infliction Of Emotional Distress (Counts XII, XIII)

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts demonstrating (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Rakofsky v. Washington Post*, 2013 WL 1975654, at *15 (Sup. Ct. N.Y. Cnty. Apr. 29, 2013) (dismissing intentional infliction of emotional distress claim under CDA and discussing state law standard); *see also Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637 (1st Dep't 2000) ("Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action.") (citation omitted).   Whether conduct is "extreme and outrageous"—that it, whether an act or omission "so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society"—is a matter of law for the Court to decide. *Beyer v. Parents for Megan's Law*, 2014 WL 3057492, at *4 (Sup. Ct. Suffolk Cnty. May 19, 2014) (rejecting claim because of CDA immunity); *Wolkstein*, 275 A.D.2d at 637.

For the negligent infliction claim, Plaintiff must allege "breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the

plaintiff to fear for his or her own safety," as well as "the same showing of outrageousness" as required for the intentional tort. *Santana v. Leith*, 117 A.D.3d 711, 712 (2d Dep't 2014) (citation omitted); *Manchanda*, 2016 WL 6806250, at *6 (citation omitted) (dismissing both claims under the CDA and for failure to state a claim).

Plaintiff alleges only that Grindr should have provided greater protections against JC's behavior. While JC's alleged behavior may be "extreme and outrageous," Grindr's purported inability to stop JC's behavior falls far short of conduct that "transcend[s] the bounds of decency" and is "atrocious and intolerable in a civilized society." *Beyer*, 2014 WL 3057492 at *4 (citation omitted). Our society, through Congress, made a policy decision to limit the obligations placed on an ICS like Grindr to police content from third parties. *See* 47 U.S.C. § 230. Even if the CDA did not immunize Grindr, it would provide guidance on what is acceptable and appropriate. Plaintiff's disagreement with this assessment does not establish the objectively extreme conduct required to support his claims. *See Manchanda*, 2016 WL 6806250, at *6. Additionally, Plaintiff has not alleged intent, a causal connection, or severe distress sufficient to state a claim for intentional harm. Nor has he alleged any duty owed by Grindr, any breach of that duty, or any facts demonstrating that Grindr, rather than JC, is the proximate cause of Plaintiff's alleged distress, to support the negligence tort. *See* Section II.B., *infra*.

**H.      Plaintiff Has Not Stated A Claim For Negligent Misrepresentation (Count XIV)**

"The elements of negligent misrepresentation are (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did justifiably rely; (4) to their detriment; and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation or duty of care." *Fromer v. Yogel*, 50 F. Supp. 2d 227, 242 (S.D.N.Y. 1999). The tort of negligent misrepresentation in New York requires a "special relationship." *Gardianos v. Calpine Corp.*, 16 A.D.3d 456, 456 (2d Dep't

2005).  As this is a tort sounding in fraud, the Federal Rules also require heightened specificity in pleadings.  *See id.*; Fed. R. Civ. P. 9(b).

Plaintiff alleges that the Terms of Use negligently misrepresented that Grindr would protect him from JC.  Am. Compl. ¶¶ 127-36.  Plaintiff has not and cannot identify any special relationship between himself and Grindr or any other duty under tort law.  Plaintiff is an adult whose only interactions with Grindr were arms-length, *e.g.*, downloading and using its dating application, and ended long ago, when Plaintiff ceased using the application in 2015.  The *Saponaro* court dismissed a similar negligent misrepresentation claim based on Grindr's Terms of Use because Grindr does not owe a duty to protect non-users from violations of policy by third-party users.  *See* 93 F. Supp. 3d at 326 (dismissing under the CDA and for failure to state a claim).  Finally, Plaintiff has not alleged that any alleged misrepresentations were the proximate cause of any injury.  *Laub v. Faessel*, 297 A.D.2d 28, 30 (2002) ("plaintiff must establish that the alleged misrepresentations ... were the direct and proximate cause of the losses claimed").

## CONCLUSION

For the reasons stated above, Grindr requests that Plaintiff's First Amended Complaint be dismissed, in its entirety, with prejudice.

Dated: New York, New York
      April 21, 2017

BRYAN CAVE LLP
/s/ Daniel P. Waxman
Daniel P. Waxman
Jacquelyn N. Schell
Daniel H. Lewkowicz
1290 Avenue of the Americas
New York, New York 10104

DPWaxman@bryancave.com
Jacquelyn.Schell@bryancave.com
Daniel.Lewkowicz@bryancave.com
(212) 541-2000
*Attorneys for Grindr LLC*

1971573